# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALESSANDRO BERNI, GIUSEPPE SANTOCHIRICO, MASSIMO SIMIOLI, and DOMENICO SALVATI, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | Case No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| BARILLA S.p.A., BARILLA AMERICA INC., and BARILLA USA, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

Plaintiffs Alessandro Berni, Giuseppe Santochirico, Massimo Simioli, and Domenico Salvati ("Plaintiffs"), by and through their undersigned attorneys, bring this class action complaint on behalf of themselves and all others similarly situated (the "Class") alleging facts related to their own purchases based on personal knowledge and all other facts based upon the investigation of counsel.

## PRELIMINARY STATEMENT

1.      Barilla S.p.A., and its subsidiaries, Barilla America, Inc., and Barilla USA (collectively, "Barilla" or the "Company"), produce and market various kinds of pasta worldwide. The Company is the largest pasta manufacturer in the world and Barilla's pasta accounts for approximately one-quarter of all pasta sold in the United States.  In addition to being sold in restaurants, Barilla's pastas are widely sold directly to consumers in an iconic blue box that can be found at supermarkets and retail outlets throughout New York and the United States.

2.      For most of Barilla's history, the Company's pastas, while sold in different shapes, were marketed as an "enriched macaroni product" made using semolina flour and durum wheat

flour.  In recent years, Barilla has attempted to maintain market share in the face of Americans'

changing tastes and dietary habits by introducing pastas that purport to be more health-conscious.

These specialized products include pastas that are labeled "Gluten Free," "Whole Grain,"

"ProteinPLUS," and "White Fiber," among others.

3.      Barilla packages these specialized pastas in same-sized boxes, and boxes that

appear to be same-sized, but fills them with less pasta.  For example, the standard, "enriched

macaroni product" version of elbow pasta is sold one-pound (454 grams) per box.  However,

ProteinPLUS elbows are sold 14.5 ounces (411 grams) per box and the Whole Grain elbows are

sold 13.25 ounces (375 grams) per box.



4.      Deceptively, however, Barilla continues to sell all three types of elbow pasta in

boxes that appear to be the same size when displayed on the shelf of a supermarket.  The box used

for the standard elbows and the Whole Grain elbows are identical, while the ProteinPlus elbows

are sold in a box that appears to be the same size but is actually thicker (as seen in the above visual comparison).  As a result, rather than reduce the size of the box for the Whole Grain or ProteinPlus pastas, Barilla substantially under-fills the boxes in which these pastas are sold.  Barilla also uses this practice when selling other shapes of pasta, such as spaghetti, penne, and shells, among others. Additional visual examples are below.





5.     By using the traditional-sized boxes that have been recognized in the consumer marketplace for many years, but under-filling them, Barilla deceptively misleads consumers into thinking that they are purchasing the same quantities of pasta as they had historically when they purchased the standard "enriched macaroni product" version.  While the boxes do identify the new reduced net weight in small print at the bottom of the box, consumers are not otherwise informed of this material change in the quantity of pasta inside, or that the boxes are substantially under-filled.  Barilla relies on consumers' familiarity with the box size and appearance, known due to decades of marketing, to mislead consumers into thinking they are purchasing the same quantity of pasta when, in reality, the Company is filling the boxes with materially less pasta.  By misleading consumers in this manner, Barilla is able to capitalize on the market for gluten-free, whole wheat, protein plus, and white fiber, while preserving and/or increasing its margins and conveying a favorable appearance relative to its own products and those of their  competitors.

4

6.      This is a consumer protection action arising out of deceptive and otherwise improper business practices that Barilla engaged in with respect to the packaging of certain of its pasta products, detailed below, which are packaged in boxes and regularly sold at supermarkets, grocery stores, convenience stores, and pharmacies.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332(d).  Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) the named Plaintiffs and defendants are citizens of different states. 28 U.S.C. §1332(d)(2)(A).

8.      Venue is proper in this district pursuant to 28 U.S.C § 1391(a) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and defendants are subject to personal jurisdiction in this district.  Defendants marketed and sold the products at issue in this action within this judicial district and do business within this judicial district.

## PARTIES

9.      Plaintiff Alessandro Berni ("Berni") is a citizen of the state of New York and resides in Bronx County.  On at least one occasion during 2016, plaintiff Berni purchased, for his own consumption, a 12 ounce (340 gram) box of Gluten Free penne, a 13.24 ounce (375 gram) box of Whole Grain rotini, a 13.25 ounce (375 gram) box of Whole Grain medium shells, a 13.25 ounce (375 gram) box of Whole Grain linguine, and a 13.25 ounce (375 gram) box of Whole Grain spaghetti in Bronx, New York.  Plaintiff Berni reasonably expected that these boxes were full of pasta and did not know that, in fact, the box of Gluten Free pasta contained approximately 25% less pasta, and the boxes of Whole Grain pasta contained 17% less pasta than they were designed

to hold, and was actually deceived.  As a result of Barilla's deceptive packaging, plaintiff Berni was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss.

10.     Plaintiff Domenico Salvati ("Salvati") is a citizen of the state of New York and resides in Kings County.  On at least one occasion during 2016, plaintiff Salvati purchased, for his own consumption, one 13.25 ounce (375 gram) box of Barilla Whole Grain medium shells in Brooklyn, New York.  Plaintiff Salvati reasonably expected that the box was full of pasta and did not know that, in fact, the box contained approximately 17% less pasta than it was designed to hold, and was actually deceived.  As a result of Barilla's deceptive packaging, plaintiff Salvati was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss.

11.     Plaintiff Mossimo Simioli ("Simioli") is a citizen of the state of New York and resides in Kings County.  On at least one occasion during 2016, plaintiff Simioli purchased, for his own consumption, a 14.5 ounce (411 gram) box of Protein Plus spaghetti and a 14.5 ounce (411 gram) box of Protein Plus penne in Brooklyn, New York.  Plaintiff Simioli reasonably expected that the boxes were full of pasta and did not know that, in fact, the boxes contained more than 10%  less pasta than they were designed to hold, and was actually deceived.  As a result of Barilla's deceptive packaging, plaintiff Simioli was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss.

12.     Plaintiff Giuseppe Santochirico ("Santochirico") is a citizen of the state of New York and resides in Queens County.  On at least one occasion during 2016, plaintiff Santochirico purchased, for his own consumption, a 14.5 ounce (411 gram) box of ProteinPLUS spaghetti in Queens, New York.  Plaintiff Santochirico reasonably expected that the boxes were full of pasta and did not know that, in fact, they contained approximately 10% less pasta than they were designed to hold, and was actually deceived.  As a result of Barilla's deceptive packaging, plaintiff

Santochirico was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss.

13.     Defendant Barilla S.p.A. is an entity organized under the laws of Italy and headquartered at Parma, Italy.  Defendant Barilla S.p.A is the parent company and owner of defendants Barilla USA and Barilla America, Inc. ("Barilla America").  Barilla S.p.A, through its subsidiaries, manufactures, packages, advertises, markets, distributes, and/or sells pasta products in the United States.

14.     Defendant Barilla America is an entity organized under the laws of Illinois and headquartered at 1200 Lakeside Drive, Bannockburn, Illinois, 60015.  Defendant Barilla America manufactures, packages, advertises, markets, distributes, and/or sells pasta products in the United States in packaging that contains non-functional slack-fill.

15.     Defendant Barilla USA is, upon information and belief, a d/b/a for either Barilla S.p.A. or Barilla America and is headquartered at 885 Sunset Ridge Road, Northbook, IL 60062.  Defendant Barilla USA manufactures, packages, advertises, markets, distributes, and/or sells pasta products in the United States.

## FACTUAL ALLEGATIONS

16.     For decades, Barilla has sold pasta in non-transparent cardboard boxes that contain an oval transparent window.  These blue Barilla boxes are so iconic as to have become an industry norm.  They are sold predominantly in the following sizes: 4-3/4 inches wide and 7-1/4 long and 10-5/8 inch x 2-3/4 inch x 1-1/4 inch.

17.     At an unknown time, Barilla began to intentionally ship thousands, if not millions, of these same-sized boxes, and boxes that appeared to be the same size when placed on a shelf, with materially less pasta inside.  Rather than change the size of the boxes from the traditional size

to a new size that reflected the reduced fill, Barilla deceptively and misleadingly continued to use the same traditional-sized boxes that had been used for decades, giving the false impression that premium, "healthy," versions of its pasta were being sold in the same quantity per box as the original "enriched macaroni product."

**A.** **Whole Grain Pastas**

18. Each of the Barilla Whole Grain pastas is a different shaped version of the same product. Each contains the same ingredient: whole grain durum wheat flour. Each is also marketed in boxes under-filled by the same amount.

19. Barilla's non-transparent boxes of Whole Grain pasta, including, but not limited to spaghetti, medium shells, elbows, and linguine, are sold approximately 17% empty, which constitutes non-functional "slack-fill" of 2.75 ounces, or 78 grams.

20. Barilla fails to disclose that, in fact, the Whole Grain pasta boxes contain a significant void. Rather, the Whole Grain pasta boxes falsely appear to contain the same amount of pasta as the original box.

**B.** **White Fiber Pastas**

21. Each of the Barilla White Fiber pastas is a different shaped version of the same product. Each contains the same ingredients: semolina, durum wheat flour, whole durum wheat flour, corn starch, niacin, iron, thiamine mononitrate, riboflavin, and folic acid. Each is also marketed in boxes under-filled by the same amount.

22. Barilla's non-transparent boxes of White Fiber pasta, including, but not limited to spaghetti, are sold approximately 25% empty, which constitutes non-functional "slack-fill" of 4 ounces, or 113 grams.

23.      Barilla fails to disclose that, in fact, the White Fiber boxes contain a significant void.  Rather, the White Fiber boxes falsely appear to contain the same amount of pasta as the original box.

**C.      ProteinPLUS Pastas**

24.      Each of the Barilla ProteinPLUS pastas is a different shaped version of the same product.  Each contains the same ingredients: semolina, grain and legume flour blend, durum wheat flour, niacin, iron, thiamine mononitrate, riboflavin, and folic acid.  Each is also all marketed in boxes under-filled by the same amount.

25.      Barilla's non-transparent boxes of ProteinPLUS pasta, including, but not limited to spaghetti, penne, and elbows, are sold approximately 10% empty, which constitutes non-functional "slack-fill" of 1.5 ounces, or 42 grams.

26.      Barilla fails to disclose that, in fact, the ProteinPLUS boxes contain a significant void.  Rather, the ProteinPLUS boxes falsely appear to contain the same amount of pasta as the original box.

**D.      Gluten Free Pastas**

27.      Each of the Barilla Gluten Free pastas is a different shaped version of the same product.  Each contains the same ingredients: corn flour, rice flour, and mono and diglycerides. Each is also marketed in boxes under-filled by the same amount

28.      Barilla's non-transparent boxes of Gluten Free pasta, including, but not limited to penne and rotini, are sold approximately 25% empty, which constitutes non-functional "slack-fill" of 4 ounces, or 113 grams.

29.      Barilla fails to disclose that, in fact, the Gluten Free boxes contain a significant void.  Rather, the Gluten Free boxes falsely appear to contain the same amount of pasta as the original box.

E.     **Non-Functional Slack-Fill**

30.     Barilla's deceptive practice described above is known as "slack-fill."   Regulations

under the Federal Food, Drug, and Cosmetic Act ("FDCA") prohibit non-functional slack-fill as

set forth in 21 C.F.R. 100.100:

> In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.
>
> > (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:
> >
> > > (1) Protection of the contents of the package;
> > >
> > > (2) The requirements of the machines used for enclosing the contents in such package;
> > >
> > > (3) Unavoidable product settling during shipping and handling;
> > >
> > > (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
> > >
> > > (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or
> > >
> > > (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

31.     As a result of Barilla's misleading and deceptive use of traditional-sized, non-transparent boxes with unlawful slack-fill, Plaintiffs and the Class have purchased boxes of pasta that contain substantially less pasta than Plaintiffs and the Class expected and had previously received when purchasing the original type of Barilla pasta.

32.     By this conduct, defendants violated New York law prohibiting the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA, 21 U.S.C. §§ 343 et seq.  Pursuant to N.Y. Agric. & Mkts. Law § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular. . . . 4. If its container is so made, formed, colored or filled as to be misleading."

33.     Further, defendants have also violated the Rules of the City of New York which provides that foods are deemed misbranded "in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 343) or the New York State Agriculture and Markets Law (§ 201) under circumstances including, but not limited to, any of the following: (1) If its labeling is false or misleading in any particular. . . (4) If its container is so made, formed, colored or filled as to be misleading. . . ." See 24 R.C.N.Y. Health Code § 71.05(d).

34.     Plaintiffs and the Class have been damaged by Barilla's violations of the foregoing laws, rules, and regulations.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the Class defined as follows:

> All purchasers of Barilla "Gluten Free," "Whole Grain," "ProteinPLUS," and "White Fiber" pastas who purchased the products for personal, family, or household use due to Barilla's deceptive practice of slack-filling, and did not resell them.
>
> Excluded from the Class are defendants; the officers, directors or employees of defendants; any entity in which the defendants have a controlling interest; and any affiliate, legal

representative, heir or assign of defendants.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

36.     The Class is sufficiently numerous because the pastas at issue are sold in thousands of stores and thousands of people have purchased them during the relevant period.  As a result, joinder of all purchasers is impractical.

37.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

•       Whether defendants labeled, packaged, marketed, advertised, and/or sold products using false, misleading and/or deceptive packaging and labeling;

•       Whether defendants' actions constitute violations of 21 U.S.C. § 343(d);

•       Whether defendants' actions constitute violations of misbranding laws in New York;

•       Whether defendants' actions constitute deceptive and unfair practices and/or violations of consumer protection laws in New York;

•       Whether defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising, and/or sale of Barilla pasta;

•       Whether defendants' labeling, packaging, marketing, advertising, and/or selling of products constituted an unfair, unlawful or fraudulent practice;

•       Whether the packaging of the pastas during the relevant statutory period constituted unlawful non-functional slack-fill;

•       Whether the members of the Class have sustained damages as a result of defendants' wrongful conduct;

•       Whether defendants were unjustly enriched;

•       The appropriate measure of damages and/or other relief; and

- Whether defendants should be enjoined from continuing their unlawful practices.

38.     Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of consumer and class action litigation.  Plaintiffs have no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

39.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct.

40.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Because of the amount of the individual Class members' claims relative to the complexity of the litigation and the financial resources of the defendants, few, if any, members of the Class would seek legal redress individually for the wrongs complained of herein.  Absent a class action, Class members will continue to suffer damages and defendants' misconduct will proceed without remedy.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF N.Y. GEN. BUS. LAW § 349

32.     Plaintiffs, on behalf of themselves and the Class, incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.  Defendants violated N.Y. Gen. Bus. Law § 349 by engaging in unfair, misleading, deceptive, and/or unlawful acts and practices.

13

33.     Plaintiffs and the members of the Class are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).  Plaintiffs and the members of the Class are consumers.

34.     N.Y. Gen. Bus. Law § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State. Defendants engaged in business, trade, or commerce, or in the furnishing of service in New York.

35.     Barilla's conduct complained of herein consisted of deceptive acts and practices in the form of misrepresentations and omissions during conduct of business in New York in violation of N.Y. Gen. Bus. Law § 349(a): the sale of pasta in misleading packages designed to conceal unlawful, non-functional slack-fill.

36.     Barilla knew or should have known that its practices, as discussed herein, were misleading and likely to deceive and mislead Plaintiffs and the Class.

37.     Plaintiffs and the Class have been injured as a result of Barilla's violation of N.Y. Gen. Bus. Law § 349(a).

38.     Barilla's deceptive and misleading acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the Class.

39.     Plaintiffs are entitled to pursue claims against Barilla under N.Y. Gen. Bus. Law § 349(h) to redress Barilla's violation of N.Y. Gen. Bus. Law § 349(a).

## COUNT II
## UNJUST ENRICHMENT, NATIONWIDE

41.     Plaintiffs, on behalf of themselves and the Class, incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

42.     As a result of defendants' deceptive, fraudulent and misleading labeling, packaging, advertising, marketing, and sales of the pastas, defendants were enriched, at the

expense of Plaintiffs and all others similarly situated, through the payment of the purchase price for the pastas.

43.     Under the circumstances, it would be against equity and good conscience to permit defendants to retain the ill-gotten benefits that it received from Plaintiffs, and all others similarly situated, in light of the fact that the quantity of pasta purchased by Plaintiffs, and all other similarly situated, was not what defendants purported it to be by its labeling and packaging.  Thus, it would be unjust or inequitable for defendants to retain the benefit without restitution to Plaintiffs, and all others similarly situated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against defendants as follows:

(A) An Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B) An Order declaring defendants' conduct violates the statutes referenced herein;

(C) An Order finding in favor of Plaintiffs and members of the Class;

(D) Compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E) Prejudgment interest on all amounts awarded;

(F) An Order of restitution and all other forms of equitable monetary relief;

(G) Injunctive relief to repackage the pastas without non-functional slack-fill as pleaded or as the Court may deem proper;

(H) An Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and,

(I) Such other and further relief as the Court deems just and proper.

Dated: July 28, 2016

**HARWOOD FEFFER LLP**

s/ Robert I. Harwood
Robert I. Harwood
Daniella Quitt
Benjamin I. Sachs-Michaels
488 Madison Ave., 8th Floor
New York, New York 10022
Tel.: (212) 935-7400
Fax:  (212) 753-3630

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
14 Bond Street, Suite 212
Great Neck, New York 11021
Tel: (516) 699-8890
Fax: (516) 699-8968

*Counsel for Plaintiffs*