UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALESSANDRO BERNI, GIUISEPPE SANTOCHIRICO, MASSIMO SIMIOLI, and DOMENICO SALVATI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARILLA G. e R. FRATELLI S.p.A. and BARILLA AMERICA, INC. d/b/a BARILLA USA,<br><br>Defendants. | Case No. 1:16-cv-04196(ENV)<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Alessandro Berni, Giuiseppe Santochirico, Massimo Simioli, and Domenico Salvati ("Plaintiffs"), by and through their undersigned attorneys, bring this class action complaint on behalf of themselves and all others similarly situated (the "Class") alleging facts related to their own purchases based on personal knowledge and all other facts based upon the investigation of counsel.

## PRELIMINARY STATEMENT

1. Defendant Barilla G. e R. Fratelli S.p.A. and its subsidiaries, including defendant Barilla America, Inc. d/b/a Barilla USA (collectively, "Barilla" or the "Company"), produce and market various kinds of pasta worldwide. The Company is the largest pasta manufacturer in the world and Barilla's pasta accounts for approximately one-quarter of all pasta sold in the United States. In addition to being sold in restaurants, Barilla pastas are widely sold directly to consumers in an iconic blue box that can be found at supermarkets and retail outlets throughout New York and the United States.

2. For much of Barilla's history, the Company's pastas, while sold in different shapes, were marketed as an "enriched macaroni product" made using semolina flour and durum wheat flour. These pastas are referred to herein as Barilla's "traditional" pastas. In recent years, consumers' dietary habits have changed. As health conscious eating has become more prevalent, Barilla has attempted to maintain market share by introducing pastas that purport to be more health-conscious than the traditional pastas. These specialty products include pastas labeled "Gluten Free," "Whole Grain," "ProteinPLUS," and "White Fiber," among others. The specialty pastas are more expensive than the traditional pastas.

3. Barilla packages and sells the specialty pastas in boxes that are the same size, or appear to be the same size, as the iconic boxes it uses for its traditional pastas. However, unlike the boxes it uses for its traditional pastas, Barilla knowingly under-fills the boxes containing the specialty pastas. As a result, the boxes containing the specialty pastas contain material amounts of empty space, otherwise known as "non-functional slack-fill." Indeed, a simple visual inspection of the inside of each box of specialty pasta reveals that the boxes are not full and contain a material amount of empty space. However, because the boxes are predominantly made of opaque cardboard, prior to purchase consumers cannot see that the specialty pasta boxes contain significant empty space.

4. Barilla's practice of under-filling the specialty pasta boxes is intentional. That is because Barilla packages the specialty pastas in the same size boxes it uses for its traditional pastas. However, whereas the traditional pasta boxes are sold full of traditional pasta, the same size boxes that are used for the specialty pastas contain substantially less specialty pasta – which are the same shape and size of the traditional pastas. Barilla is clearly capable of filling same-sized boxes of pasta with the same volume of pasta but chooses not to. Instead, Barilla markets

and sells its specialty pastas in same-sized boxes as the traditional pastas but with substantially less pasta. The empty space in the specialty boxes is therefore intentional.

5. The additional empty space in each box of specialty pasta is not visible prior to purchase, serves no purpose, and constitutes prohibited non-functional slack-fill. By selling the specialty pastas with hidden non-functional slack-fill, Barilla deceives consumers, who are led to believe that each box is full of pasta, when it actually contains significant hidden empty space.

6. This is a consumer protection action arising out of deceptive and otherwise improper business practices that Barilla engaged in with respect to the packaging of certain of its pasta products, detailed below, which are packaged in boxes and regularly sold at supermarkets, grocery stores, convenience stores, and pharmacies.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332(d). Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) the named Plaintiffs and defendants are citizens of different states. 28 U.S.C. §1332(d)(2)(A).

8. Venue is proper in this district pursuant to 28 U.S.C § 1391(a) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and defendants are subject to personal jurisdiction in this district. Defendants marketed and sold the products at issue in this action within this judicial district and do business within this judicial district.

## PARTIES

9. Plaintiff Alessandro Berni ("Berni") is a citizen of the state of New York and resides in Bronx County. Between September 2015 and April 2016, plaintiff Berni purchased, for his own consumption, a 12 ounce (340 gram) box of Gluten Free penne, a 13.24 ounce (375 gram) box of Whole Grain rotini, a 13.25 ounce (375 gram) box of Whole Grain medium shells, a 13.25 ounce (375 gram) box of Whole Grain linguine, and a 13.25 ounce (375 gram) box of Whole Grain spaghetti in Bronx, New York. Plaintiff Berni reasonably expected that these boxes were full of pasta and did not know that in fact they contained substantial hidden empty space, and was actually deceived. As a result of Barilla's deceptive packaging, plaintiff Berni was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss. Plaintiff Berni expects to continue to purchase Barilla products in the future.

10. Plaintiff Domenico Salvati ("Salvati") is a citizen of the state of New York and resides in Kings County. Between May and July 2016, plaintiff Salvati purchased, for his own consumption, one 13.25 ounce (375 gram) box of Barilla Whole Grain medium shells in Brooklyn, New York. Plaintiff Salvati reasonably expected that these boxes were full of pasta and did not know that in fact they contained substantial hidden empty space, and was actually deceived. As a result of Barilla's deceptive packaging, plaintiff Salvati was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss. Plaintiff Salvati expects to continue to purchase Barilla products in the future.

11. Plaintiff Mossimo Simioli ("Simioli") is a citizen of the state of New York and resides in Kings County. During May 2016, plaintiff Simioli purchased, for his own consumption, a 14.5 ounce (411 gram) box of ProteinPLUS spaghetti and a 14.5 ounce (411 gram) box of ProteinPLUS penne in Brooklyn, New York. Plaintiff Simioli reasonably

reasonably expected that these boxes were full of pasta and did not know that in fact they contained substantial hidden empty space, and was actually deceived. As a result of Barilla's deceptive packaging, plaintiff Simioli was overcharged, did not receive the benefit of the bargain, and/or suffered out-of-pocket loss. Plaintiff Simioli purchased the pastas throughout 2016, including during May 2016. Plaintiff Simioli expects to continue to purchase Barilla products in the future.

12. Plaintiff Giuseppe Santochirico ("Santochirico") is a citizen of the state of New York and resides in Queens County. During 2016, plaintiff Santochirico purchased, for his own consumption, a 14.5 ounce (411 gram) box of ProteinPLUS spaghetti in Queens, New York. Plaintiff Santochirico reasonably expected that these boxes were full of pasta and did not know that in fact they contained substantial hidden empty space, and was actually deceived. As a result of Barilla's deceptive packaging, plaintiff Santochirico was overcharged, did not receive the benefit of the bargain and/or suffered out-of-pocket loss. Plaintiff Simioli purchased the pastas throughout 2016, including during February and March 2016. Plaintiff Santochirico expects to continue to purchase Barilla products in the future.

13. Defendant Barilla G. e R. Fratelli S.p.A. ("Barilla S.p.A.") is an entity organized under the laws of Italy and headquartered at Parma, Italy. Defendant Barilla S.p.A. is the parent company and owner of defendants Barilla USA and Barilla America, Inc. ("Barilla America"). Barilla S.p.A., through its subsidiaries, manufactures, packages, advertises, markets, distributes, and/or sells pasta products in the United States.

14. Defendant Barilla America is an entity organized under the laws of Illinois and headquartered at 1200 Lakeside Drive, Bannockburn, Illinois 60015. Defendant Barilla America

manufactures, packages, advertises, markets, distributes, and/or sells pasta products in the United States in packaging that contains non-functional slack-fill.

15. Defendant Barilla USA is, upon information and belief, a d/b/a entity for either Barilla S.p.A. or Barilla America and is headquartered at 885 Sunset Ridge Road, Northbook, IL 60062. Defendant Barilla USA manufactures, packages, advertises, markets, distributes, and/or sells pasta products in the United States.

## FACTUAL ALLEGATIONS

16. For decades, Barilla has sold pasta in non-transparent cardboard boxes that contain a transparent oval window. These blue Barilla boxes are so iconic as to have become an industry norm.

17. At an unknown time, Barilla began to intentionally ship the specialty pastas in thousands, if not millions, of these same-sized boxes, and boxes that appeared to be the same size when placed on a shelf, with materially less pasta inside. Rather than change the size of the specialty pasta boxes from the traditional size to a new size that reflected the reduced fill, Barilla deceptively and misleadingly continued to use the same traditional-sized boxes that had been used for decades, giving the false impression that the specialty versions of its pasta were being sold in the same volume per box as the traditional "enriched macaroni product."

18. Accordingly, Barilla's specialty pastas are sold in boxes that are substantially under-filled and thus deceptive because: (a) they contain a substantial amount of unnecessary hidden empty space, known as non-functional slack-fill; and (b) they contain substantially less pasta than Barilla's own identically-sized boxes of traditional pasta. Plaintiffs' claims are independent of the weight labels on Barilla's pasta boxes.

6

19. Barilla sells spaghetti pasta in rectangular boxes. Sold in these boxes are both the traditional type of spaghetti, and several specialty types, including Gluten Free and ProteinPLUS. The boxes of traditional spaghetti are sold full of pasta. The boxes of specialty spaghetti, while the same size as the boxes of traditional spaghetti, contain significant unnecessary empty space and are not full. As a result, the boxes of specialty spaghetti deceptively appear to be full, when they actually contain significant unnecessary, hidden empty space. Barilla intentionally sells the specialty spaghetti boxes with this unnecessary, hidden empty space. A comparison of three different types of spaghetti and the same-sized box in which they are packaged, is shown in Image 1, below.



Image 1

20. While the traditional box of spaghetti contains one-pound (16 ounces) of spaghetti, the same-sized boxes of Gluten Free and ProteinPLUS spaghetti contain materially

less pasta, and therefore, materially more unused space, or slack-fill. A box of Gluten Free spaghetti contains only 12 ounces of spaghetti, or roughly 25% less product in the same-size box. The space that holds the additional four ounces of spaghetti in the traditional box is non-functional slack-fill in the Gluten Free box. Likewise, the box containing ProteinPLUS spaghetti contains only 14.5 ounces of spaghetti, or roughly 10% less product than the same-sized box of traditional spaghetti. The space that holds the additional volume of spaghetti in the traditional box is non-functional slack-fill in the Gluten Free and ProteinPLUS boxes. Consumers are unable to see that the boxes of Gluten Free and ProteinPLUS spaghetti contain significantly more unused space than the boxes of traditional spaghetti because the boxes are opaque. Also, Barilla sells the specialty spaghettis in boxes that have a smaller cellophane window than the traditional box in order to obscure the fact that the boxes containing the specialty pasta are not full.

21. Barilla also intentionally under fills other types of specialty pastas. For example, Barilla's boxes of specialty elbows pasta are also under-filled. Barilla uses a same sized box to sell the traditional version of elbows pasta and the Whole Grain version. The ProteinPLUS version is sold in a similar-sized, but slightly larger box. A comparison of the boxes in which these three types of elbows pasta are sold is shown in Image 2, below.



Image 2

22. The box containing Whole Grain elbows is approximately 20% less full than the box containing the traditional elbows. The space that holds the additional pasta in the traditional box is non-functional slack-fill in the Whole Grain box. This additional empty space is not visible prior to opening the box.

23. Likewise, while the ProteinPLUS elbows are sold in a box that appears to be the same size as the traditional elbows box when viewed from the front, as on a supermarket shelf, the ProteinPLUS box is slightly deeper (as demonstrated above in Image 2). Barilla therefore increased the size of the box it uses for the ProteinPLUS elbows but filled it with even less pasta than the smaller traditional elbows box, leaving the ProteinPLUS box approximately 25% less full. The space holding the additional pasta in the traditional box is non-functional slack-fill in the ProteinPLUS box. This additional empty space is not visible prior to opening the box.

24. By manipulating box size and the amount of empty space not visible to consumers in the specialty elbows pasta to give the impression that the boxes are full of pasta when they are not, Barilla deceives consumers.

25. Barilla employs the same practice to under-fill other types of specialty pasta, including penne, shells, and lasagna, among others. For example, a comparison of three different types of penne pasta products and the same-sized box in which they are packaged is shown in Image 3, below.



Image 3

26. By using the traditional-sized boxes that have been recognized in the consumer marketplace for many years, but under-filling them with specialty pasta, Barilla knowingly and deceptively sells customers substantially less-full boxes of pasta and misleads them into thinking that they are purchasing more pasta than they actually are. While the boxes do identify the net weights in small print at the bottom of the box, consumers are not otherwise informed of this material change in the volume of pasta inside, or that the boxes are substantially under-filled.

Barilla relies on consumer familiarity with the box size and appearance -- following decades of marketing by Barilla -- to mislead consumers into thinking they are purchasing the same volume of pasta when, in reality, the Company is intentionally selling specialty pastas in boxes that contain substantially more hidden empty space, and less pasta, than they appear to. By misleading consumers in this manner, Barilla is able to capitalize on the market for Gluten Free, Whole Wheat, ProteinPLUS, and White Fiber, while selling considerably less product, preserving, and/or increasing its margins, and conveying a favorable appearance relative to its own and competing products.

### A. **Whole Grain Pastas**

27. Each of the Barilla Whole Grain pastas is a different shaped version of the same product. Each contains the same one ingredient: whole grain durum wheat flour. Each is also marketed and sold in boxes that are substantially under-filled.

28. Barilla's non-transparent boxes of Whole Grain pasta, including, but not limited to spaghetti, medium shells, elbows, and linguine, are sold with approximately 17% less pasta per box, and therefore significantly more hidden empty space, than the corresponding traditional pastas. As a result, they deceptively appear to be full of pasta when they are not.

### B. **White Fiber Pastas**

29. Each of the Barilla White Fiber pastas is a different shaped version of the same product. Each contains the same ingredients: semolina, durum wheat flour, whole durum wheat flour, corn starch, niacin, iron, thiamine mononitrate, riboflavin, and folic acid. Each is also marketed and sold in boxes that are substantially under-filled.

30. Barilla's non-transparent boxes of White Fiber pasta, including, but not limited to spaghetti, are sold approximately 25% less pasta per box than the corresponding traditional

11

pastas, and therefore significantly more hidden empty space, than the corresponding traditional pastas. As a result, they deceptively appear to be full of pasta when they are not.

### C. ProteinPLUS Pastas

31. Each of the Barilla ProteinPLUS pastas is a different shaped version of the same product. Each contains the same ingredients: semolina, grain and legume flour blend, durum wheat flour, niacin, iron, thiamine mononitrate, riboflavin, and folic acid. Each is also all marketed and sold in boxes that are substantially under-filled.

32. Barilla's non-transparent boxes of ProteinPLUS pasta, including, but not limited to spaghetti, penne, and elbows, are sold approximately with 10% less pasta per box than the corresponding traditional pastas, and therefore significantly more hidden empty space, than the corresponding traditional pastas. As a result, they deceptively appear to be full of pasta when they are not.

### D. Gluten Free Pastas

33. Each of the Barilla Gluten Free pastas is a different shaped version of the same product. Each contains the same ingredients: corn flour, rice flour, and mono and diglycerides. Each is also all marketed and sold in boxes that are substantially under-filled.

34. Barilla's non-transparent boxes of Gluten Free pasta, including, but not limited to penne and rotini, are sold with approximately 25% less pasta per box than the corresponding traditional pastas, and therefore significantly more hidden empty space, than the corresponding traditional pastas. As a result, they deceptively appear to be full of pasta when they are not.

### E. Non-Functional Slack-Fill

35. Barilla's deceptive practice described above is known as "slack-fill." Regulations under the Federal Food Drug and Cosmetic Act ("FDCA") prohibit non-functional slack-fill as set forth in 21 C.F.R. 100.100:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

36. Under rules promulgated by the Food and Drug Administration, accurate weight does not exculpate misleading non-functional slack-fill (58 FR 61423, 64128-29), package size is a representation of quantity (58 FR 64131), and consumers do not need to manipulate packages in order to determine the amount of slack-fill (58 FR 64128).

37. As a result of Barilla's misleading and deceptive use of traditional-sized, non-transparent boxes with unlawful slack-fill, Plaintiffs and the Class have purchased boxes of pasta that contain substantially less pasta than Plaintiffs and the Class expected and had previously received when purchasing the original type of Barilla pasta.

38. By this conduct, defendants violated New York law prohibiting the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA, 21 U.S.C. §§ 343 et seq. Pursuant to N.Y. Agric. & Mkts. Law § 201 (Reuters 2016), "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular. … 4. If its container is so made, formed, colored or filled as to be misleading."

39. Further, defendants have also violated the Rules of the City of New York which provides that foods are deemed misbranded "in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343) or the New York State Agriculture and Markets Law (§ 201) under circumstances including, but not limited to, any of the following: (1) If its labeling is false or misleading in any particular. . . . (4) If its container is so made, formed, colored or filled as to be misleading . . . ." *See* 24 R.C.N.Y. Health Code § 71.05(d).

40. Plaintiffs and the Class have been damaged by Barilla's violations of the foregoing laws, rules, and regulations.

## CLASS ACTION ALLEGATIONS

41. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the Class defined as follows:

> All purchasers of Barilla "Gluten Free," "Whole Grain," "ProteinPLUS," and "White Fiber" pastas who purchased the products for personal, family, or household use due to Barilla's deceptive practice of slack-filling, and did not resell them.
>
> Excluded from the Class are defendants; the officers, directors or employees of defendants; any entity in which the defendants have a controlling interest; and any

affiliate, legal representative, heir or assign of defendants. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

42. The Class is sufficiently numerous because the pastas at issue are sold in thousands of stores and thousands of people have purchased them during the relevant period. As a result, joinder of all purchasers is impractical.

43. There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

- Whether defendants labeled, packaged, marketed, advertised, and/or sold products using false, misleading, and/or deceptive packaging and labeling;

- Whether defendants' actions constitute violations of 21 U.S.C. § 343(d);

- Whether defendants' actions constitute violations of misbranding laws in New York;

- Whether defendants' actions constitute deceptive and unfair practices and/or violations of consumer protection laws in New York;

- Whether defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising, and/or selling of Barilla pasta;

- Whether defendants' labeling, packaging, marketing, advertising, and/or selling of products constituted an unfair, unlawful, or fraudulent practice;

- Whether the packaging of the pastas during the relevant statutory period constituted unlawful non-functional slack-fill;

- Whether the members of the Class have sustained damages as a result of defendants' wrongful conduct;

- Whether defendants were unjustly enriched;

- The appropriate measure of damages and/or other relief; and

- Whether defendants should be enjoined from continuing their unlawful practices.

44. Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of consumer and class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

45. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct.

46. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Because of the amount of the individual Class members' claims relative to the complexity of the litigation and the financial resources of the defendants, few, if any, members of the Class would seek legal redress individually for the wrongs complained of here. Absent a class action, Class members will continue to suffer damages and defendants' misconduct will proceed without remedy.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF NEW YORK GBL § 349

47. Plaintiffs, on behalf of themselves and the Class, incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein. Defendants violated N.Y. Gen. Bus. Law § 349 by engaging in unfair, misleading, deceptive, and/or unlawful acts and practices.

48. Plaintiffs and the members of the Class are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h). Plaintiffs and the members of the Class are consumers.

49. N.Y. Gen. Bus. Law § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State. Defendants engaged in business, trade, or commerce, or in the furnishing of service in New York.

50. Barilla's conduct complained of herein consisted of deceptive acts and practices in the form of misrepresentations and omissions during conduct of business in New York in violation of N.Y. Gen. Bus. Law § 349(a): the sale of pasta in misleading packages designed to conceal unlawful, non-functional slack-fill.

51. Barilla knew or should have known that its practices, as discussed herein, were misleading and likely to deceive and mislead Plaintiffs and the Class.

52. Plaintiffs and the Class have been injured as a result of Barilla's violations of N.Y. Gen. Bus. Law § 349(a).

53. Barilla's deceptive and misleading acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the Class.

54. Plaintiffs are entitled to pursue claims against Barilla under N.Y. Gen. Bus. Law § 349(h) to redress Barilla's violations of N.Y. Gen. Bus. Law § 349(a).

## COUNT II
## UNJUST ENRICHMENT, NATIONWIDE

55. Plaintiffs, on behalf of themselves and the Class, incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

56. As a result of defendants' deceptive, fraudulent, and misleading labeling, packaging, advertising, marketing, and selling of the pastas, defendants were enriched, at the

expense of Plaintiffs and all others similarly situated, through the payment of the purchase price for the pastas.

57. Under the circumstances, it would be against equity and good conscience to permit defendants to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact that the quantity of pasta purchased by Plaintiffs, and all other similarly situated, was not what defendants purported it to be by its labeling and packaging. Thus, it would be unjust or inequitable for defendants to retain the benefit without restitution to Plaintiffs, and all others similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against defendants as follows:

(A) An Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B) An Order declaring defendants' conduct violates the statutes referenced herein;

(C) An Order finding in favor of Plaintiffs and members of the Class;

(D) Compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E) Prejudgment interest on all amounts awarded;

(F) An Order of restitution and all other forms of equitable monetary relief;

(G) Injunctive relief to repackage the pastas without non-functional slack-fill as pleaded or as the Court may deem proper;

(H) An Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and,

(I) Such other and further relief as the Court deems just and proper.

Dated: December 5, 2016

**HARWOOD FEFFER LLP**

 s/ Robert I. Harwood
Robert I. Harwood
Daniella Quitt
Benjamin I. Sachs-Michaels
488 Madison Ave., 8th Floor
New York, New York 10022
Tel.: (212) 935-7400
Fax: (212) 753-3630

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
14 Bond Street, Suite 212
Great Neck, New York 11021
Tel: (516) 699-8890
Fax: (516) 699-8968

*Counsel for Plaintiffs*