# UNITED STATES *DISTRICT* COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALESSANDRO BERNI, GIUISEPPE SANTOCHIRICO, MASSIMO SIMIOLI, and DOMENICO SALVATI, on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No. 1:16-cv-04196 |
| | ) | |
| Plaintiffs, | ) ) | **BARILLA'S MOTION TO** |
| v. | ) ) | **DISMISS PLAINTIFFS'** |
| | ) | **AMENDED COMPLAINT** |
| BARILLA G. e R. FRATELLI S.p.A. and BARILLA AMERICA, INC. d/b/a BARILLA USA, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 2

ARGUMENT .................................................................................................................... 6

1.   Legal Standard ....................................................................................................... 6

2.   Plaintiffs Do Not State a Viable Claim Under Section 349 for a Deceptive Act. ............. 7

    A.   Plaintiffs have Failed to Allege that the Packages Of Barilla Specialty Pasta Contain Slackfill that is Non-Functional. ............................................................... 7

    B.   Plaintiffs Do Not Plausibly Allege Deception Act. ............................................. 11

    C.   Plaintiffs have Failed to Plausibly Allege Injury. ............................................... 14

3.   Plaintiffs' Unjust Enrichment Must Be Dismissed Because it is Duplicative ................. 14

4.   Plaintiffs' Claims Fail for Lack of Standing ........................................................... 15

5.   Plaintiff has Alleged No Basis for Jurisdiction Against Fratelli ................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Arden Assorted Candy Drops,*
  80 F. Supp. 911 (D. Mass. 1948) ............................................................................13

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................................13

*Bautista v. CytoSport, Inc.,*
  No. 15-CV-9081 (CS), 2016 WL 7192109 (S.D.N.Y. Dec. 12, 2016)................6, 7, 8, 9, 11

*Bush v. Mondelez Int'l, Inc.,*
  2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ...............................................7, 9, 12

*Bush v. Mondelez Int'l, Inc.,*
  No. 16–CV–2460, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ...........................8, 9

*Corsello v. Verizon N.Y., Inc.,*
  18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012)..................................14

*DiFolco v. MSNBC Cable,*
  662 F. 3d 104 (2nd Cir 2010)....................................................................................4

*Ebner v. Fresh, Inc.,*
  838 F.3d 958 (9th Cir. 2016) ..................................................................................12

*Fermin v. Pfizer Inc.,*
  2016 WL 6208291 (E.D.N.Y. Oct. 18, 2016)...................................................11, 12

*Gelber v. Stryker Corp.,*
  752 F.Supp.2d 328 (S.D.N.Y. 2010)........................................................................10

*In re HSBC BANK, USA, NA., Debit Card Overdraft Fee Litig.,*
  1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) .....................................................................15

*Izquierdo v. MondelezInc.,*
  2016 WL 6459832 (S.D.N.Y. 2016).........................................................................14

*JGB Enterprises, Inc. v. Beta Fluid Sys., Inc.,*
  135 F. Supp. 3d 18, 26 (N.D.N.Y. 2015)..................................................................17

*Mahon v. Ticor Title Ins. Co.,*
  683 F.3d 59 (2d Cir. 2012).......................................................................................15

i

*O'Connor v. Henkel Corp.*,
    No. 14-CV-5547 ARR MDG, 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015)..................10, 11

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503, 524-25 (S.D.N.Y. 2015) ........................................................................14

*Sham v. Ellison*,
    356 F.3d at 215 ......................................................................................................................15

*Spokeo v. Robbins*,
    136 Sup. Ct. 1540 (2016)......................................................................................................15

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..................................................................................................6, 7

*Stroud v. Tyson Foods, Inc.*,
    91 F. Supp. 3d 381, 388 (E.D.N.Y. 2015) ............................................................................16

*Tomasino v. Estee Lauder Cos., Inc.*,
    44 F. Supp. 3d 251, 25456, 2014 WL 4244329 (E.D.N.Y. 2014) ..........................................15

*Victor v. R.C. Bigelow, Inc.*,
    No., 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014)..................................................................9

*Wilder v. News Corp.*,
    No. 11 CIV. 4947 PGG, 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ..............................16, 17

**Statutes**

21 U.S.C.A. § 343 ...........................................................................................................................12

Section 197-b of Article 16 of the Agriculture and Markets Law ..................................................12

Section 214-h of Article 17 of the Agriculture and Markets Law ..................................................12

Federal Food, Drug and Cosmetics Act.........................................................................................10

New York's General Business Law § 349..............................................1, 5, 7, 8, 9, 11, 12, 14

**Other Authorities**

21 C.F.R. 100.100............................................................................................................................10

UNITED STATES *DISTRICT* COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALESSANDRO BERNI, GIUISEPPE SANTOCHIRICO, MASSIMO SIMIOLI, and DOMENICO SALVATI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARILLA G. e R. FRATELLI S.p.A. and BARILLA AMERICA, INC. d/b/a BARILLA USA,<br><br>Defendants. | Case No. 1:16-cv-04196<br><br>**BARILLA'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

## INTRODUCTION

Plaintiffs' First Amended Complaint alleges that each of the four plaintiffs bought between one and five boxes of certain of Barilla's pasta products ("Pasta Products") which were clearly labeled as to the net weight in both ounces and grams on the front of the boxes. (Am. Complaint ¶¶'s 9-12; 21-25.) Plaintiffs claim that these boxes contained "hidden empty space" or "slackfill." Plaintiffs do not allege that these pasta products failed to contain the precise amount of ounces and grams that were indicated on the front of the boxes. Nor do Plaintiffs claim that the pasta products failed to contain the number of servings that was also specifically stated on the box. But Plaintiffs claim that by selling the Pasta Products, Barilla violated a New York statute outlawing deceptive business practices ("Section 349" of the New York's General Business Law) and were unjustly enriched as a result.

Plaintiffs' claims are fatally flawed because (a) they are subject to an absolute defense under Section 349, (b) they assert no plausible claim that a reasonable consumer would be deceived, (c) the unjust enrichment claims fail to state a claim, (d) Plaintiffs have failed to allege

injury in fact, and (e) Plaintiffs lack standing. Moreover, Plaintiffs have failed to allege why they should be able to pursue claims against Barilla's Italian parent; the First Amended Complaint is devoid of any allegations as to why there is jurisdiction over that entity.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2016, Plaintiffs filed this lawsuit seeking a class action against certain Barilla entities. The original complaint sought relief against "Barilla SpA," "Barilla USA," and Barilla America, in connection with Barilla's purported underfilling of boxes of pasta. Barilla America sent a letter to this Court pointing out the numerous flaws in Plaintiffs' Complaint (including the fact that "Barilla SpA" and "Barilla USA" were not the names of any Barilla entity) and asking for leave to file a motion to dismiss. In response, Plaintiffs told this Court that they would file an Amended Complaint and did so on November 30, 2016.

The Amended Complaint was filed against Barilla America, Inc. and its parent corporation, Barilla G. e R. Fratelli, S.p.A. ("Fratelli"), who are jointly referred to in the Amended Complaint as "Barilla." (Am. Comp. ¶1.) The Amended Complaint alleges that Fratelli engaged in activities such as manufacturing and the sale of pasta "through its subsidiaries." (Am. Comp. ¶13.) The Amended Complaint alleges no independent action by Fratelli.

The Amended Complaint alleges that certain packages of Barilla brand "specialty pasta" products are "underfilled" and contain "empty space" or "slackfill." (Am. Comp. ¶3.) The Amended Complaint asserts that the specialty products include pasta labeled "Gluten Free" "Whole Grain," "Protein Plus," and "White Fiber," among others. (Am. Comp. ¶2.) The Amended Complaint makes comparisons between these "specialty pasta products" and Barilla pasta products which it calls "traditional pastas." The Amended Complaint notes that the "traditional pastas" are made only with "semolina flour and durum wheat flour" and

acknowledges that the "specialty pastas" contain different ingredients than the traditional pastas. (Am. Comp. ¶2; ¶¶'s 27, 29, 31, 33.) For example, it alleges that the "ProteinPLUS" pastas contain "semolina, grain and legume flour blend, durum wheat flour, niacin, iron, thiamine mononitrate, riboflavin and folic acid" while the "Gluten Free" pastas contain "corn flour, rice flour, and mono and diglycerides.' (Am. Comp. ¶¶'s 31, 33.)

The Amended Complaint asserts that boxes of the specialty pastas contain less pasta per box weight than the traditional pastas of the same shape, and makes several allegations that are based on differences in weight between the two boxes. (See, e.g., ¶20. ¶22.) The Amended Complaint does not allege, however, that a piece of any specialty pasta weighs the same as a piece of the traditional pasta with the same shape (which the Amended Complaint acknowledges contains different ingredients).

The Amended Complaint alleges that each of the Plaintiffs purchased "for his own consumption" boxes of either "Whole Grain" "Gluten Free" and "ProteinPLUS" pasta. (Am. Complaint ¶¶'s 8-9-13.) Although the Amended Complaint makes allegations of "underfilling" involving "White Fiber" pasta, the Amended Complaint does not allege that any of the Plaintiffs purchased that type of pasta. (See, e.g. Am. Comp. ¶¶'s 29-30.)  And although the Amended Complaint makes repeated allegations comparing Barilla's Specialty Pastas with the Traditional Pastas, the Amended Complaint does not allege that any of the Plaintiffs had ever purchased Barilla's Traditional Pastas. Nor does the Amended Complaint allege that any of the Plaintiffs had ever seen, or even had any familiarity with, Barilla's Traditional Pasta.

As the Amended Complaint acknowledges, and as pictured in the example below, every box of Barilla's Specialty Pasta (as well as all Traditional Pasta) contains a net weight statement located on the front of the box of pasta. (Am. Complaint ¶26.) Every box also contains

3

information about the exact serving size and the number of servings per box, as is also pictured in the example below.[1]



---

[1] The declaration of Talita Erickson, attached hereto as Exhibit A, contain the above pictures. In deciding a Rule 12 motion, courts are entitled to consider evidence outside the complaint if the complaint "relies heavily upon its terms and effect" thereby rendering the [evidence] integral to the complaint" and there is no dispute regarding the authenticity or accuracy of the evidence. *DiFolco v. MSNBC Cable*, 662 F. 3d 104, 111 (2nd Cir 2010). The Amended Complaint "relies heavily" upon the packaging of Barilla's pasta in alleging deception.



The Amended Complaint does not allege that the information about the weight, number

of servings or serving size contained on any box of Barilla pasta is anything other than accurate.

The Amended Complaint raises two claims based on the alleged underfilling of boxes of

Barilla's Specialty Pasta Products and seeks a nationwide class action. Count I of the Amended

Complaint is based on purported violations of New York's General Business Law § 349, which

5

prohibits "deceptive acts and practices." ("Section 349'). Count II of Plaintiffs' Amended Complaint is based on purported common law "unjust enrichment" by Barilla.

## ARGUMENT

### 1.    Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009). As the Supreme Court has explained, this standard creates a "two-pronged approach" which is based on "two working principles." *Id.*

First, although a complaint need not include detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not suffice." *Id.*, citing *Twombly,* 550 U.S. at 555 (complaint does not suffice if it tenders "naked assertions" devoid of "further factual enhancement"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* A court must ignore any allegation that is no more than a conclusion. *Bautista v. CytoSport, Inc.*, No. 15-CV-9081 (CS), 2016 WL 7192109, at *2 (S.D.N.Y. Dec. 12, 2016).

Second, a court must determine whether the facts pleaded "plausibly give rise to an entitlement to relief." *Id.* Importantly, the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18, citing *Twombly*. "Where the well-pleaded facts do not permit the court to infer more than the

6

mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.*, quoting Fed.R.Civ.P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* See also *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *1 (N.D. Cal. Dec. 16, 2016).

## 2. Plaintiffs Do Not State a Viable Claim Under Section 349 for a Deceptive Act.

### A) Plaintiffs have Failed to Allege that the Packages Of Barilla Specialty Pasta Contain Slackfill that is Non-Functional.

To state a claim for a violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 ("Section 349"), a plaintiff must show "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Bautista v. CytoSport, Inc.*, No. 15-CV-9081 (CS), 2016 WL 7192109, at *4 (S.D.N.Y. Dec. 12, 2016). Moreover, Section 349 makes it "a complete defense that the act or practice is ... subject to and complies with the rules and regulations of, and the statutes administered by, ... any official ... agency of the United States as such rules, regulations or statutes are interpreted by ... federal courts." N.Y. Gen. Bus. Law § 349(d). Therefore, as a matter of law, if slackfill passes muster under federal law, there can be no violation under Section 349. *Id.* at *3.

Under federal law, a container is misleading only if it contains "non-functional slackfill." *Bautista* at *1, citing 21 C.F.R. § 100.100. "Slackfill is the difference between the actual capacity of the container and the *volume* of the product contained therein." *Id.* (emphasis supplied.) Slackfill is considered to be "nonfunctional" only if the empty space does not serve one of the following purposes: i) the protection of the contents of the package; ii) the

7

requirements of the machines used to enclose the contents in the package; iii) settling during shipping and handling; iv) the need for the package to perform a specific function; v) the food is packaged in a reusable container with empty space as part of the presentation of the food; or vi) inability to increase the fill level or reduce the package size because, for example, the size is necessary to accommodate food labeling requirements or discourage theft. *Bautista, Id.*

Plaintiffs here have failed to adequately allege that packages of Barilla Specialty Products contain non-functional slackfill. First, Plaintiffs' allegations fail because they fail to allege, other than in a conclusory fashion, that any empty space in those packages was not as a result of one of the six permissible reasons for slackfill. Plaintiffs make no allegation that they investigated the manufacturing process and determined that any slackfill is not due to the requirements of the machines filling the containers. Nor do they assert any facts which could establish that there is no need for the boxes of pasta to be a certain size in order to facilitate proper handling. And Plaintiffs do not address the possibility that, when filled, the product may settle during shipping and handling. Rather, Plaintiffs merely set forth the statutory exemption, allege that the empty space in the Barilla Specialty Products are "unnecessary," and "serves no purpose." (Am. Complaint ¶¶19, 20, 22, 23. These conclusory allegations do not suffice to allege the facts necessary to properly allege that the "empty space" does not comply with federal law, and thus that such purported "empty space" can form the basis for a claim under Section 349. *Bautista v. CytoSport, Inc.*, No. 15-CV-9081 (CS), 2016 WL 7192109, at *4 (S.D.N.Y. Dec. 12, 2016); *See Bush v. Mondelez Int'l, Inc.*, No. 16–CV–2460, 2016 WL 5886886, at *4 (N.D. Cal. Oct. 7, 2016).

In *Bautista*, the plaintiff made allegations that were more specific than the ones asserted by Plaintiffs here, alleging that the "empty space was not used to protect [the] product [nor]

necessary for enclosing the product, [n]or because of settling." The *Bautista* court held that even those allegations do not suffice to plead "facts rendering that conclusion plausible." *Bautista v. CytoSport, Inc.*, 2016 WL 7192109, at *4 (S.D.N.Y. Dec. 12, 2016). "Such wholly conclusory allegations," the court said, "are insufficient to state a nonfunctional slackfill claim" under Section 349. *Id.*

In the *Bush* case, the plaintiff, after reciting the six circumstances in which slackfill is functional and not misleading, alleged that "none of these circumstances apply here." *Id.* at ¶5. The Bush court found this allegation insufficient to meet Rule 8's plausibility standard. *Bush v. Mondelez Int'l, Inc.*, 2016 WL 5886886, at *4 (N.D. Cal. Oct. 7, 2016), citing *Victor v. R.C. Bigelow, Inc.*, No., 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014) (finding that a complaint consisting of "a litany of FDA regulations and federal statutes, and no factual allegation about how [the defendant's] actions ... are either unlawful or fraudulent aside from conclusory statements ...does not suffice for Rule 8's 'plausibility' standard.")

Plaintiffs do not even allege as much as the plaintiffs in *Bautista* or *Bush*. Instead, Plaintiffs repeatedly use the term "non-functional slackfill" and make a conclusory statement that the empty space was "unnecessary" and "serves no purpose." While setting out the six circumstances in which slackfill is functional and not misleading, Plaintiffs fail to allege that none of those circumstances were applicable here. As the Court in *Bautista* noted, several other courts have dismissed claims that merely recite federal regulations and fail to allege facts which state a plausible claim. *Bautista*, at * 4, citing, *inter alia*, *Victor v. R.C. Bigelow, Inc.*, No. 13–CV–2976, 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014) (dismissing claim based on "nothing more than a litany of FDA regulations and federal statutes," with "no factual allegation about how [defendant's] actions" run afoul of them "aside from conclusory statements that do not

9

suffice for ... plausibility; *Gelber v. Stryker Corp.*, 752 F.Supp.2d 328, 334 (S.D.N.Y. 2010) (plausibility standard requires more than conclusory statement that defendant violated federal regulations).

And there is another reason why Plaintiffs' allegations of purported slackfill do not constitute a cognizable claim. The Federal Food, Drug and Cosmetics Act ("FDCA") bars any state law claim based on a requirement "that is different from or in addition to, or that is otherwise not identical with" a requirement of the FDCA or certain related federal statutes. *O'Connor v. Henkel Corp.*, No. 14-CV-5547 ARR MDG, 2015 WL 5922183, at *5 (E.D.N.Y. Sept. 22, 2015). As Plaintiffs acknowledge, federal regulations define impermissible slackfill as the empty space in a container based on the *volume* of a product. See, 21 C.F.R. 100.100.

Although the Amended Complaint pays lip service to concerns with volume, and generally parrots the term "empty space," a review of Plaintiffs' specific allegations regarding the Specialty Products makes it clear that Plaintiffs' claims are based on the *weight* of the products, rather than their volume. Plaintiffs base their claims of "empty space" on differences between boxes of Standard Pasta Products and Specialty Pasta Products. But Plaintiffs acknowledge that Specialty Products and Standard Products contain different ingredients. (Compare Am. Comp. (Am. Comp. ¶2 with ¶¶'s 27, 31 and 33. ) Those differences in ingredient makeup would obviously contribute to weight differences.

Thus, in order to allege that there is less pasta by *volume* in any box of Specialty Products versus Standard Products, a comparison of the *dimension* of empty space would be required. Instead, Plaintiffs impermissibly rely on comparisons of weight. For example, Paragraph 20 of the Amended Complaint states that that a standard box of spaghetti contains

10

16 ounces of pasta but a "box of Gluten Free Spaghetti contains only 12 ounces of pasta, **or roughly 25%** less pasta in the same box." In other words, plaintiffs' allegation involves **a mathematical calculation involving the weight of the two boxes.** (12 is 25% less than 16). Paragraph 20 makes a similar mathematical calculation involving weight regarding ProteinPLUS Spaghetti, another Specialty Product (14.5 ounce box of ProteinPlus Pasta contains 10% less than 16 ounces Standard Product box.) And again in Paragraph 28, Plaintiffs allege there is less pasta in a Specialty Product box compared to the Standard Product based on a mathematical calculation concerning the weight of the box. *(See* Paragraphs 21 and 28, alleging that a 13.25 oz. box of Whole Grain Pasta contains 17% less by weight, than the 16 oz. Standard Products box.) Despite conclusory references to volume, Plaintiffs' slackfill claims are based on issues regarding weight, not volume. Because Plaintiffs' theory of liability contradicts the FDCA's slackfill regulations, their claims are barred. *O'Connor v. Henkel Corp.*, No. 14-CV-5547 ARR MDG, 2015 WL 5922183, at *5 (E.D.N.Y. Sept. 22, 2015); *Bautista v. CytoSport, Inc.*, No. 15-CV-9081 (CS), 2016 WL 7192109, at *4 (S.D.N.Y. Dec. 12, 2016).

B) <u>Plaintiffs Do Not Plausibly Allege Deception</u>

In order to allege a claim under Section 349 for a deceptive business practice in connection with packaging, a plaintiff must establish that allegedly misleading packaging was "likely to mislead [or deceive] a reasonable consumer acting reasonably under the circumstances." *Fermin v. Pfizer Inc.*, 2016 WL 6208291, at *2 (E.D.N.Y. Oct. 18, 2016). That deception "must be probable, not just possible." *Id.* It is "well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable

consumer." *Id.* In determining whether a reasonable consumer would be misled by the size of the packages, the Court must consider "the entire context of the [package]." *Id.*

In their Amended Complaint, Plaintiffs maintain that Barilla has violated Section 349 by selling "pasta in a misleading package" (Am. Comp. ¶50). However, Plaintiffs also concede that the products at issue accurately display the weight of the product on the box. (Complaint ¶26.) And the Amended Complaint does not dispute that the boxes of pasta at issue inform the consumer of the number of servings per box as well as the serving size, as specifically required under federal law. See, 21 U.S.C.A. § 343 (West). As pictured above on pages 4-5 this information is plainly visible on boxes of Barilla's pasta.

Several courts, dealing with claims of slackfill, have held that where a package "accurately states" the quantity of its contents, it simply "is not reasonable to infer" that the package "would mislead reasonable consumers as to the quantity they are receiving." [2] *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *2 (N.D. Cal. Dec. 16, 2016). In *Bush,* the court noted that a package that provided the consumer with the accurate net weight and information as to the amount of product received via correct statement as to serving size and number could not misled a reasonable consumer. *See also, Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) (A "rational consumer," would not "simply assume" something about the product that a cursory inspection would show not to be true.) The *Bush* court recognized that statements by the FDA which could be interpreted as being to the contrary are not binding on any court interpreting state consumer protection statutes. *Bush* at *3.Courts have also held that it is not reasonable for consumers to

---

[2] There is another reason why it would not be reasonable to infer that a reasonable consumer would be misled: In addition to the information on the package concerning its contents a consumer purchasing in New York would also be provided with conspicuous information on the shelf on which the product is displayed detailing the product's unit price and total price, e.g., the price per ounce paid for the contents of box, which the consumer could compare with any other product sold.. See, Section 197-b of Article 16 of the Agriculture and Markets Law, along with regulations promulgated pursuant to Section 214-h of Article 17 of the Agriculture and Markets Law (1 NYCRR § 345.1 et seq.)

12

assume that packaged goods in "our industrial civilization" are completely free of empty space. *In re Arden Assorted Candy Drops*, 80 F. Supp. 911, 913 (D. Mass. 1948) (the "ordinary person" should "expect some slack or air space" in products packed by machine).

Plaintiffs attempt to assert that, despite the accurate information concerning the contents on the boxes of Barilla's Specialty pasta, consumers are misled because of a comparison with amounts they supposedly received when purchasing Barilla's Standard Pasta products. (See e.g. Am. Comp. ¶37.) But the Amended Complaint does not allege that any of the Plaintiffs had a basis for such a comparison. The Amended Complaint details only the Plaintiffs' purchase of Barilla's Specialty Pasta products. (Am. Comp. ¶¶ 9-12.) The Amended Complaint fails to allege that that even one of the Plaintiffs was familiar with Barilla's Standard Pasta products, let alone that any of the Plaintiffs actually purchased one of Barilla's Standard Pasta products. And the Amended Complaint seeks certification of a class consisting of "All purchasers" of Barilla's Specialty Products without regard to whether any of those purchasers had ever purchased, or was familiar with, Barilla's Standard Pasta products. (See Am. Complaint ¶ 41.) The allegations concerning Barilla's "Standard Products" thus provide no basis on which to support an allegation that the Plaintiffs, or the class which they seek, might have been deceived by the packages of Barilla Pasta at issue.

In any event, reasonable consumers are not likely to be misled because Barilla's Specialty Pasta packages clearly and accurately state the amount of product in the container, as well as the number of servings and the serving size, by both weight and volume. Any purchaser was thus informed of exactly how much pasta he or she was getting. Plaintiffs' contention that reasonable consumers are likely to be misled despite such information being displayed on the product at issue, does not satisfy the pleading standard set forth in *Twombly* and *Iqbal* that has been adopted

13

by the courts of the District of Columbia.  For this reason too, this Court should dismiss Plaintiff's claims.

C)     <u>Plaintiffs have Failed to Plausibly Allege Injury</u>

In addition to the pleading deficiencies set forth above, the Amended Complaint is fatally flawed because it fails to allege the injury required to maintain claims under Section 349. To maintain such a claim, a plaintiff must allege that their purported injury occurred "by reason of any violation of [Section 349]." Plaintiffs do not allege that any injury (the price paid) flowed from any act of Barilla.  The Amended Complaint does not state that Barilla (rather than the supermarket and retail outlets where Plaintiffs purchased their pasta) set the price of the pasta. Without such an allegation, a plaintiff has not alleged the requisite injury to maintain a claim under Section 349. *Izquierdo v. MondelezInc.,* 2016 WL 6459832, at \*6 (S.D.N.Y. 2016).

**3.     Plaintiffs' Unjust Enrichment Must Be Dismissed Because it is Duplicative**

Count II, based on "unjust enrichment," should also be dismissed for failure to state a claim. An unjust enrichment claim cannot survive, as here, when it is merely duplicative of other claims. *Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012). Unjust enrichment "is not a catchall cause of action to be used when others fail." *Id.; Reynolds v. Lifewatch, Inc.,* 136 F. Supp. 3d 503, 524-25 (S.D.N.Y. 2015). Moreover, Plaintiffs' claim for unjust enrichment is based on purported deception involving the weight of the pasta purchased. As discussed above, no such deception has been alleged here since Plaintiffs admit that they purchased the exact amount of pasta described on the product packaging and their claims involve the weight of the pasta purchased.

14

### 4.   Plaintiffs' Claims Fail for Lack of Standing

The Amended Complaint should also be dismissed based on a lack of standing. Standing is a threshold issue and must be addressed on a claim-by-claim basis. *See Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 64 (2d Cir. 2012). Plaintiffs lack standing to seek equitable relief and their claims for such relief must be dismissed. The Supreme Court and the Second Circuit have made clear that absent "a sufficient likelihood that [a plaintiff] will again be wronged in a similar way," a plaintiff lacks standing to seek injunctive relief. *Lyons,* 461 U.S. at 102; *see also Sham v. Ellison,* 356 F.3d at 215 (same); *Tomasino v. Estee Lauder Cos., Inc.,* 44 F. Supp. 3d 251, 25456, 2014 WL 4244329, at *2-3 (E.D.N.Y. 2014). Plaintiffs do not and cannot allege a threat of future harm. Once a consumer opens the box, he or she is aware of the amount of pasta that is contained in the box. A consumer cannot claim that he or she was deceived regarding the purchase of a subsequent box of pasta. The fact that the boxes accurately state the weight of the product contained therein, is further evidence that a customer who purchases again knows exactly what he or she is getting and is not deceived. Plaintiffs also lack standing because although their claims are based on a comparison of the Specialty Products and the Standard Products, Plaintiffs do not allege that they ever purchased or even saw the Standard Products before purchasing the Specialty Products; thus, none have alleged that they were deceived. *See Spokeo v. Robbins,* 136 Sup. Ct. 1540 (2016) (plaintiff must allege injury in fact).

Plaintiffs also lack standing to enforce the foreign-state unjust enrichment claims asserted in Count II. The Amended Complaint alleges that all of the Plaintiffs are citizens and residents of New York, and offers no connection between any plaintiff and any state other than New York. Thus, none of the Plaintiffs have standing to bring those claims. *In re HSBC BANK,*

*USA, NA., Debit Card Overdraft Fee Litig.,* 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) ("plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to that state"). The allegations in Count II relating to a nationwide class should also be stricken because different states have different standards for what constitutes an unjust enrichment.

### 5.    Plaintiff has Alleged No Basis for Jurisdiction Against Fratelli

In addition to the reasons stated above, the claims against Fratelli must be dismissed because Plaintiffs have alleged no basis for jurisdiction over Barilla America's corporate parent. The presence of a subsidiary in a state is insufficient to establish the parent's presence in that state. A court may impute the jurisdictional acts of a parent to its subsidiary only where "the subsidiary is acting as an agent for the parent, or the parent's control is so complete that the subsidiary is a 'mere department' of the parent." *Wilder v. News Corp.*, No. 11 CIV. 4947 PGG, 2015 WL 5853763, at *6 (S.D.N.Y. Oct. 7, 2015); *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 388 (E.D.N.Y. 2015) ("As the Second Circuit has explained," for New York courts to have personal jurisdiction over a parent based on acts of a subsidiary, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent."). "In order to establish that a subsidiary is a 'mere department' of the parent, a plaintiff must show that the parent exerts 'pervasive control over the subsidiary." *Wilder, Id.*

The standard for veil-piercing in the personal jurisdiction context is a demanding one and "a Court will only find jurisdiction over the foreign subsidiary when 'the activities of the parent show a disregard for the separate corporate existence of the subsidiary.'" *Id.* Here, Plaintiffs have failed to allege any facts whatsoever concerning Fratelli, asserting only in conclusory fashion that it engage in activates in the United States "through its subsidiaries." Such an allegation is

16

insufficient to subject Fratelli to jurisdiction in this Court. Id. at *11; See also, *JGB Enterprises, Inc. v. Beta Fluid Sys., Inc.*, 135 F. Supp. 3d 18, 26 (N.D.N.Y. 2015) (conclusory allegation that defendant parent "owned and controlled" the operations of defendant subsidiary is insufficient to establish that subsidiary was either an "agent" or "mere department" of parent.) For this reason alone, the claims against Fratelli should be dismissed.

Dated:     February 28, 2017

**SHER TREMONTE LLP**
Michael Tremonte
Justin J. Gunnell
80 Broad Street, Suite 1301
New York, New York 10004
Tel: (212) 202-2600
Fax: (212) 202-4156

**MUCH SHELIST PC**
/s/ Steven Blonder
Steven Blonder (admitted *pro hac vice*)
Jonathan D. Sherman (admitted *pro hac vice*)
Marissa L. Downs (admitted *pro hac vice*)
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel: (312) 521-2000
Fax: (312) 521-2100
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Steven P. Blonder, an attorney, certify that on February 28, 2017, I caused a true and correct copy of *Barilla's Motion to Dismiss Plaintiffs' Amended Complaint* and *Declaration of Talita Erickson* to be served on the following via email:

Robert I. Harwood
Daniella Quitt
Benjamin I. Sachs-Michaels
Harwood Feffer LLP
488 Madison Ave., 8th Floor
New York, New York 10022
Tel.: (212) 935-7400
Fax: (212) 753-3630

Ronen Sarraf
Joseph Gentile
Sarraf Gentile LLP
14 Bond Street, Suite 212
Great Neck, New York 11021
Tel: (516) 699-8890
Fax: (516) 699-8968

/s/ Steven P. Blonder

18

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALESSANDRO BERNI, GIUSEPPE | ) |
| SANTOCHIRICO, MASSIMO SIMIOLI, and | ) |
| DOMENICO SALVATI, on behalf of themselves | ) Case No. 16-cv-04196 |
| and all others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) **DECLARATION OF** |
| | ) **TALITA ERICKSON** |
| v. | ) |
| | ) |
| BARILLA S.p.A., BARILLA AMERICA INC. | ) |
| and BARILLA USA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Talita Erickson declares the following to be true under penalty of perjury pursuant to 28 U.S.C. §1746:

1. I am a resident of Illinois and am over the age of eighteen (18) years of age. I am currently employed by Barilla America, Inc. and have held position of General Counsel since October 2012.

2. I make this declaration based on my personal knowledge of the information and records available to me as they are kept in the ordinary course of business, information obtained from other employees upon whom I regularly rely in the ordinary course of business, and/or my general knowledge.

3. I make this declaration in support of Barilla America's Motion to Dismiss Plaintiffs' Amended Complaint.

4. I am familiar with the packaging and labeling of all Barilla pasta products sold in the United States.

5.    The picture below depicts an accurate representation of the front of a package of

Barilla's Gluten Free Penne pasta that was sold in stores in New York state in 2016:



6. The picture below depicts an accurate representation of the side of a package of Barilla's Gluten Free Penne pasta that was sold in stores in New York state in 2016:

T. R. Erickson

Talita Erickson