**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————

ALESSANDRO BERNI, GIUISEPPE
SANTOCHIRICO, MASSIMO SIMIOLI, and
DOMENICO SALVATI, on behalf of themselves
and all others similarly situated,

                       Plaintiffs,

                  v.

BARILLA G. e R. FRATELLI, S.p.A., and
BARILLA AMERICA INC. d/b/a BARILLA
USA,

                    Defendants.

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:16-cv-04196(ENV)(SLT)


**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... iii

I.    PRELIMINARY STATEMENT .................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ................................................ 2

III.  THE SETTLEMENT ..................................................................................... 4

      A.    Certification of the Class ..................................................................... 4

      B.    Labeling Change and Injunctive Relief .............................................. 4

      C.    Notice Program ................................................................................... 4

      D.    Class Counsel Fees & Expenses ......................................................... 5

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .............. 5

      A.    The Settlement Is Procedurally Fair ................................................... 6

      B.    The Settlement Is Substantively Fair .................................................. 8

            1.   The complexity, expense and likely duration of litigation 9
                 (*Grinnell* factor 1) ................................................................. 9

            2.   The reaction of the class to the settlement
                 (*Grinnell* factor 2) ................................................................. 9

            3.   The stage of the proceedings and the amount of discovery completed
                 (*Grinnell* factor 3) ................................................................. 9

            4.   The risks of establishing liability, damages and of
                 maintaining the class action through the trial
                 (*Grinnell* factors 4, 5 and 6) .............................................. 10

            5.   The ability of Defendants to withstand a greater judgment
                 (*Grinnell* factor 7) ............................................................... 11

            6.   The range of reasonableness of the settlement in light of the best
                 possible recovery and in light of all the attendant risks of litigation
                 (*Grinnell* factors 8 and 9) ................................................. 12

V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS ..........................13

        A.      The Class Meets All Rule 23(a) Prerequisites ........................................................13

                1.      Numerosity Under Rule 23(a)(1) ................................................................13

                2.      Commonality Under Rule 23(a)(2) ............................................................14

                3.      Typicality Under Rule 23(a)(3) .................................................................15

                4.      Adequacy of Representation Under Rule 23(a)(4) ....................................15

        B.      The Class Meets the Requirements of Rule 23(b)(2)............................................16

VI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ......................17

        A.      The Notice Plan......................................................................................................18

        B.      The Proposed Notice Plan is Adequate and Appropriate.......................................18

VII.    THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING .............................19

VIII.   CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

*Ackerman v. Coca-Cola Co.,*
    2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ....................................................17

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................................................13

*Blessing v. Sirius XM Radio, Inc.,*
    507 F. App'x. 1 (2d Cir.2012) ................................................................................................6

*Charron v. Pinnacle Grp. N.Y. LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)...................................................................................11

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013)........................................................................................6, 8, 16

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)..............................................................................................8, 11

*Diaz v. Residential Credit Solutions, Inc.,*
    299 F.R.D. 16 (E.D.N.Y. 2014) ............................................................................................15

*Dupler v. Costco Wholesale Corp.,*
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..................................................................................9

*Ebin v. Kangadis Food, Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................................14

*Enriquez v. Cherry Hill Mkt. Corp.,*
    993 F. Supp. 2d 229 (E.D.N.Y. 2014) ..................................................................................15

*Fogarazzao v. Lehman Bros., Inc.,*
    232 F.R.D. 176 (E.D.N.Y. 2005) ..........................................................................................15

*Handschu v. Special Servs. Div.,*
    787 F.2d 828 (2d Cir. 1986)..................................................................................................18

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................................7

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................7

*In re Painewebber Ltd. P'shps. Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................11

*In re Payment Card Interchange Fee & Merch. Discount. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................10

*In re Quaker Oats Labeling Litig.*,
   No. 5:10-cv-00502-RS (N.D. Cal. filed July 29, 2014) ..........................................12

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................14

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .....................................................................7

*In re Traffic Exec. Assoc. E. Railroads*,
   627 F.2d 631 (2d Cir. 1980) .....................................................................................8

*Jermyn v. Best Buy Stores, L.P.*,
   2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) ......................................17

*Lilly v. Jamba Juice Co., No. 13-cv-02998*,
   2015 U.S. Dist. LEXIS 57637 (N.D. Cal. May 1, 2015) ..................................12, 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ........................................................................13, 14, 15

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) .............................................................................6, 7, 8

*Moore v. Margiotta,*
   581 F. Supp. 649 (E.D.N.Y. 1984) .......................................................................16

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ...............................................................................17

*Passafiume v. NRA Group, L.L.C.,*
   274 F.R.D. 424 (E.D.N.Y. 2010). ......................................................................8, 9

*Penn. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co.,*
   772 F.3d 111 (2d Cir. 2014).................................................................................14

*Reade-Alvarez v. Eltman, Eltman & Cooper,P.C.,*
   237 F.R.D. 26 (E.D.N.Y. 2006) .............................................................................8

*Robidoux v. Celani,*
   987 F.2d 931 (2d. Cir. 1993)...........................................................................13, 15

*Sykes v. Mel S. Harris & Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015)..............................................................................14, 17

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ....................................................................................14, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005).................................................................................6, 18

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Ins., ,*
   2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) .....................................8

*Willix v. Healthfirst, Inc.,*
   2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011)....................................10

## **Statutes**

21 U.S.C. § 343..........................................................................................................3

24 R.C.N.Y. Health Code § 71.05(d) .......................................................................3

Fed. R. Civ. P. 23(a)(1)............................................................................................13

Fed. R. Civ. P. 23(a)(3)..............................................................................................15

Fed. R. Civ. P. 23(b)(2)...................................................................................4, 16, 17

Fed. R. Civ. P. 23(c)(2)(A) ........................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................18

Fed. R. Civ. P. 23(e) .......................................................................................2, 17, 18

Fed. R. Civ. P. 23(e)(1)..............................................................................................17

Fed. R. Civ. P. 23(e)(2).........................................................................................6, 19

Fed. R. Civ. P. 23(g) ...................................................................................................2

N.Y. Agric. & Mkts. Law § 201 ..................................................................................3

Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.      PRELIMINARY STATEMENT

Plaintiffs allege that Defendant Barilla America, Inc. d/b/a/ Barilla USA ("Barilla") and its corporate parent Barilla G. e R. Fratelli S.p.A misled consumers by selling under-filled boxes of specialty pasta in violation of federal "slack fill" regulation. Through this litigation and the resulting settlement detailed herein, Plaintiffs have obtained substantial relief for the Class – Barilla has agreed to change the packaging of its boxes of specialty pasta to include graphics and language that clearly identify minimum amounts of pasta contained in each box of specialty pasta. This injunctive relief is broad, complete and directly resolves the claims alleged.

These substantial labeling changes were obtained after extensive arms' length negotiations over several months and involved multiple telephonic and in-person conversations, as well as numerous back and forth proposals mediated by the Court. There is no question that the settlement was hard-fought.

Given the scope and breadth of this injunctive relief, Plaintiffs have determined that the benefits of this settlement outweigh the risks of continued litigation to pursue what would potentially be nominal monetary damages for the Class. The settlement takes into account the substantial risks the Parties would face if the litigation continued. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the settlement so that notice can

---

[1]      The Parties' Class Action Settlement Agreement ("Settlement Agreement") is attached to the Joint Declaration of Daniella Quitt and Ronen Sarraf ("Jt. Decl."). Capitalized terms used herein have the meaning that the Settlement Agreement ascribes to them. References to "§ __" are to the Settlement Agreement. References to "¶ __" are to the Amended Class Action Complaint (the "Complaint"), dated December 5, 2016, Docket Entry ("DE") 26.

be provided to the members of the Class and a Fairness Hearing can be scheduled to consider final approval of the Settlement. *See* Fed. R. Civ. P. 23(e). Plaintiffs also respectfully request provisional certification of the proposed Class, to be appointed as representatives for the Class, and for their counsel to be appointed as Class Counsel. *See* Fed. R. Civ. P. 23(g).  Plaintiffs further request approval of the proposed notice program as it meets the requirements of due process and satisfies the requirements under Rule 23.

## II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiffs commenced this action on August 30, 2016, against several Barilla entities seeking to remedy defendants' deceptive practice of selling under-filled products in violation of federal "slack-fill" regulations. ¶ 1-6.

Barilla is the world's largest pasta manufacturer, representing one quarter of all pasta sold in the United States. ¶ 1. In addition to selling traditional pasta in numerous shapes made from semolina flour and durum wheat flour, Barilla also sells a variety of specialty pastas such as "Gluten Free," "Whole Grain," "ProteinPLUS" and "White Fiber," among others. ¶ 2.  However, as alleged in the Amended Complaint, these specialty pastas, which are packaged in identically sized boxes as the traditional pastas, are materially under-filled. ¶ 3. For example, Barilla sells specialty spaghetti (*e.g*., Gluten Free, ProteinPLUS, etc.) in the same sized box as its traditional spaghetti, but under-fills the boxes containing the specialty pasta, as detailed in the below picture:



¶ 19.

This practice implicates the Federal Food Drug and Cosmetic Act ("FDCA") which prohibit non-functional slack-fill as set forth in 21 C.F.R. 100.100. ¶ 35. Under rules promulgated by the Food and Drug Administration, accurate weight does not exculpate misleading non-functional slack-fill (58 FR 61423, 64128-29), package size is a representation of quantity (58 FR 64131), and consumers do not need to manipulate packages in order to determine the amount of slack-fill (58 FR 64128). ¶ 36.  Pursuant to N.Y. Agric. & Mkts. Law § 201 (Consol. 2018), "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular. … 4. If its container is so made, formed, colored or filled as to be misleading." ¶ 38.  Defendants also violated the Rules of the City of New York which provides that foods are deemed misbranded "in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343) or the New York State Agriculture and Markets Law (§ 201) under circumstances including, but not limited to, any of the following: (1) If its labeling is false or misleading in any particular. . . . (4) If its container is so made, formed, colored or filled as to be misleading . . . ." *See* 24 R.C.N.Y. Health Code § 71.05(d). ¶ 39.

On February 28, 2017, Defendants moved to dismiss the action, which the Parties fully briefed.  During the second half of 2017, the Parties engaged in lengthy settlement discussions. one.  The Parties exchanged letters, information and documents relevant to their claims, had multiple conversations and attended numerous lengthy hearings with the Court.  Following these extensive efforts, and with the Court's assistance, the Parties were able to resolve their dispute.

## III.    THE SETTLEMENT

The Settlement Agreement defines the Class, describes the Injunctive Relief to which the Parties agreed, and proposes a plan for disseminating notice to the Class.

### A.    Certification of the Class

Pursuant the Settlement Agreement § 6.1, the Parties agree to seek provisional certification of the Class, pursuant to Fed. R. Civ. P. 23(b)(2), defined as follows:

> All consumers in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from July 28, 2010 until the date of the preliminary approval of the settlement of this litigation. Excluded from the Class are persons who timely and properly exclude themselves from the Class as provided in the Settlement Agreement.

### B.    Labeling Change and Injunctive Relief

Pursuant to the Settlement Agreement, Section 2, Ex. D, Barilla agreed to make label modifications to include, *inter alia*, a "fill" line on products containing less than one pound (16 ounces) of pasta.

### C.    Notice Program

The Parties have retained a third-party administrator to implement the notice process, handle class member inquiries and receive any requests for exclusion.  The Settlement Agreement contemplates providing notice of the Settlement to the Class through two means: (1)

implementation of a multi-platform internet and social media campaign to circulate general information about the Settlement; and, (2) creation of a Class Settlement Website that contains Settlement information and important case-related documents.  In addition, the Class Settlement Website will include procedural information regarding the status of the Court-approval process which will be regularly updated.

      **D.**     **Class Counsel Fees & Expenses**

The Settlement Agreement, Section 7, provides that Class Counsel will apply for an award of $450,000 for fees and expenses.  Barilla will pay up to these amounts, as awarded by the Court. These figures were agreed to by the Parties with the considerable assistance of the Court and after agreement on all other substantive terms.

The $450,000 figure includes not only class counsel's fees, but the expenses Class Counsel incurred while investigating this matter and litigating it, the costs of providing notice to the class. Deducting for the various expenses associated with this action and its resolution, the balance that remains for compensating Class Counsel's time in working on this Action will be considerably less than $450,000.  The Parties recognize that the Court shall have the final authority to award the amount of fees and expenses.

**IV.**    **THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

Class Counsel worked hard to investigate this matter, litigate it, and reach a settlement. While Plaintiffs and Class Counsel believe the claims resolved have merit, they also recognize that there is significant expense and risk associated with continuing to prosecute the claims through trial and appeal. Class Counsel has taken those uncertainties into account as well as the delays inherent in such litigation. In the process of investigating and litigating this case, Class Counsel conducted significant research on the various consumer protection statutes at issue as well as the

overall legal landscape to determine the likelihood of success and the reasonable parameters for which like settlements have been approved. They believe the settlement provides significant relief to the Class. Accordingly, Class Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of the Class. In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96,116 (2d Cir. 2005); "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010).

A.     **The Settlement Is Procedurally Fair**

A district court's approval of a settlement is contingent on a finding the settlement is 'fair, reasonable, and adequate.'" *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2d Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2). The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement is both: (1) procedurally fair and (2) substantively fair.  *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). In recognition of the "strong judicial policy in favor of settlements, particularly in the class action context," courts evaluating settlement agreements adopt a presumption of both their procedural and substantivefairness. *See McReynolds*, 588 F.3d at 803 (*citing Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 116 (2d Cir. 2005)). The settlement here is both procedurally and substantively fair.

A proposed settlement is entitled to a "presumption of fairness" where, as here, the process leading to the proposed settlement was fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients (and, in the case of Class Counsel, the Class). *See*

*McReynolds*, 588 F.3d at 803; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arms' length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are mostclosely acquainted with the facts of the underlying litigation."); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel").

Here, counsel for the Parties have a substantial amount of experience in litigating class actions as well as negotiating class settlements.  Before agreeing to a settlement, Class Counsel conducted an extensive investigation, retained an expert in the manufacturing and slack-fill industry, engaged in discovery, and weighed the risks of continued litigation. It was through this process that Class Counsel was able to obtain an understanding of the strengths and weaknesses of their case and Defendant's case and to evaluate and negotiate the Settlement. The participation of the Court in settlement negotiations further establishes a settlement's fairness. *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding the arm's-length negotiation element "amply satisfied" where the parties, "represented by highly experienced and capable counsel, engaged in extensive arms' length negotiations, which included multiple sessions mediated by . . . an experienced and well-regarded mediator of complex . . . cases.").  Accordingly, the settlement is procedurally fair.

**B.     The Settlement Is Substantively Fair**

To demonstrate the substantive fairness of a settlement, a party must analyze the nine

factors the Second Circuit set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)

("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d

Cir. 2000). *Charron*, 731 F.3d at 247 (citations omitted). The nine *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement … in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement … to a possible recovery in light of
> all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463). These factors favor preliminary

approval of the Settlement. However, "'[i]n the context of a motion for preliminary approval of a

class action settlement, the standards are not so stringent as those applied when the parties seek

final approval.'" *Passafiume v. NRA Group, L.L.C.*, 274 F.R.D. 424, 430 (E.D.N.Y. 2010). "It is

at most a determination that there is what might be termed 'probable cause' to submit the proposal

to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Assoc. E.

Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

In fact, some *Grinnell* factors, "particularly the reaction of the class to the settlement, are

impossible to weight prior to notice and a hearing." *Reade-Alvarez v. Eltman, Eltman &

Cooper,P.C.,* 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *Waterford Twp. Police & Fire Ret. Sys. v.

Smithtown Bancorp, Ins*., 2015 U.S. Dist. LEXIS 73276, at *20 (E.D.N.Y. Apr. 17, 2015) ("[A]t

preliminary approval, it is not necessary to exhaustively consider the[*Grinnell*] factors applicable

to final approval."):

8

> Therefore, a full fairness analysis is unnecessary at this stage. [citation omitted]. Preliminary approval is appropriate where it is the result of serious, informed, non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.

*Passafiume*, 274 F.R.D. at 430-31.  Even though the Court need not, at the preliminary approval stage, assess the final approval factors, a review of those factors demonstrates that this Settlement merits preliminary approval.

### 1. The complexity, expense and likely duration of litigation (*Grinnell* factor 1)

Consumer class action lawsuits, like this action, are complex, expensive, and lengthy.  *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010).  As described above, Plaintiffs filed this action almost two years ago. Since then, the parties engaged in discovery, briefed a motion to dismiss and engaged in several lengthy settlement discussions with the active participation of the Court. Should this Court not approve the settlement, Defendants would renew their motion to dismiss, and lengthy and contentious litigation would resume, with disputes likely occurring over discovery, class certification, summary judgment motions, and expert testimony.  Moreover, the benefits of reverting to litigation and the likelihood of success would be uncertain.

### 2. The reaction of the class to the settlement (*Grinnell* factor 2)

It is premature to address this factor.

### 3. The stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)

The third *Grinnell* factor – the stage of the proceedings and the amount of discovery completed – considers "whether Class Plaintiffs had sufficient information on the merits of the

case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

With the Court's assistance, the Parties engaged in significant discussions and an exchange of information.  While no formal discovery commenced, Class Counsel retained an expert and received from Barilla significant sales information about its specialty pasta products, the method in which such pasta products were packaged and the labeling of such specialty pasta boxes.  In all, the Parties amassed and exchanged considerable information on which to make an informed decision about settlement.

    **4.**  **The risks of establishing liability, damages and of maintaining the class action through the trial (*Grinnell* factors 4, 5 and 6)**

The fourth, fifth and sixth *Grinnell* factors – the risks of effecting class certification, establishing or incurring liability, damages and burdens of prosecuting the class action through the trial –weigh in favor of approving the Settlement Agreement. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (*citation omitted*).  This expensive and protracted litigation would continue on, with no guaranteed or inevitable favorable outcome. Although Plaintiffs believe that they could succeed in certifying a class here, they also recognize that they face several obstacles to obtaining and maintaining class certification.  First, it may be difficult (although not impossible) to quantify the precise amount of damages suffered by the Class. Plaintiffs recognize the challenge of quantifying the claim's effect across more than a dozen separate products, where the time periods in which the challenged claim appeared on the Product packaging vary not only among the Products but also among the various package sizes in which each Product was sold. So it may be difficult (although not impossible) to

10

quantify the precise amount of damages suffered by the class. The variations in the labeling dates also may create difficulties in ascertaining class members, as consumers may have difficulty recalling which variety and which package size they purchased during a particular time period. Class Counsel is also mindful of the inherent problems of proof related to the claims and defenses to the claims asserted in the Litigation.

### 5. The ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)

The seventh *Grinnell* factor – the ability of a defendant to withstand a greater judgment – has, in practice, transformed into an acknowledgement that it is more important that a class receive some relief than possibly "yet more" relief. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012).  Should Plaintiffs succeed at trial, damages could be calculated under various theories, including purchase price, premium price and/or statutory damages. Barilla is a dominant multi-national corporate entity. As such, Plaintiffs have no reason to believe that it could not withstand a judgment under any of these theories. However, while evidence that the Defendants will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. *In re Painewebber Ltd. P'shps. Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997).

The Settlement Agreement, as discussed above, affords the Class substantial nonmonetary benefits. The Settlement Agreement provides the primary relief sought by the Class – the assurance that the Products will not be labeled, marketed or advertised in a misleading manner. Moreover, by resolving the Class' claims, the Settlement Agreement removes the Class' costs of maintaining litigation.

6. **The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation (*Grinnell* factors 8 and 9)**

The relief provided by the Settlement Agreement is within the range of reasonableness, in light of the best possible recovery and in light of all the attendant risks of litigation. Courts have consistently approved injunction-only settlement agreements that resolve deceptive and false food labeling class actions. *See, e.g., Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 57637 (N.D. Cal. May 1, 2015); Final Order Approving Class Action Settlement, *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502-RS (N.D. Cal. filed July 29, 2014).  In doing so, these courts have emphasized that the relief obtained in these settlements – "complete relabeling of . . . challenged products" – "provides meaningful injunctive relief . . . within the range of possible recoveries by the Class." *See Lilly*, 2015 U.S. Dist. LEXIS 57637, at *4; Final Order Approving Class Action Settlement at 4, *In re Quaker Oats*, No. 5:10-cv-00502-RS, *supra*.  This litigation caused Barilla to modify the labeling and marketing challenged by Plaintiffs.  The Settlement Agreement provides the primary relief sought in the Litigation–injunctive relief that prohibits and restricts the Products from being labeled, marketed or advertised in a misleading manner.  The settlement provides for a clear notification of the fill-size in Barilla's specialty pasta boxes, providing consumers with unquestionable clarity regarding just how much pasta they are buying.  This notification is composed of graphics designed by the Parties and which will require a complete redoing of Barilla's manufacturing process.  This relief constitutes a "complete relabeling of . . . challenged products," and amounts to "meaningful injunctive relief . . . within the range of possible recoveries by the Class." *See Lilly*, 2015 U.S. Dist. LEXIS 57637, at *8; Final Order Approving Class Action Settlement at 4, *In re Quaker Oats Labeling Litig.*, No. 5:10-cv-00502-RS, *supra* at 17. Thus, consideration of the range of reasonableness of the settlement in light of the best possible recovery

and in light of all the attendant risks of litigation weighs staunchly in favor of approving the Settlement.

* * *

Collectively and independently, the *Grinnell* factors warrant a conclusion that the Settlement is fair, adequate and reasonable.  Plaintiffs respectfully request that the Court grant preliminary approval of the settlement.

## V.     THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997). As set forth more fully below, the proposed settlement class satisfies all of the prerequisites of Rule 23(a) and (b)(2) and, consequently, Plaintiffs respectfully ask the Court to certify the Class preliminarily, for settlement purposes.

### A.     The Class Meets All Rule 23(a) Prerequisites

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. The Class meets each of these four prerequisites and, consequently, satisfies Rule 23(a).

#### 1.     Numerosity Under Rule 23(a)(1)

Under the numerosity prerequisite of Rule 23(a), plaintiffs must show that their proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit U.S. Court of Appeals has consistently treated this prerequisite liberally, explaining that numerosity will be found where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d. Cir. 1993). Though no magic number of class members exists for meeting the numerosity

13

prerequisite, courts "presume [the prerequisite is met] for classes larger than forty members." *Penn. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Here, the Class is "obviously numerous." *Marisol A.,* 126 F.3d at 376. The Products are ubiquitous, heavily marketed and available nationwide. Accordingly, the Class clearly meets the numerosity prerequisite of Rule 23(a).

### 2. Commonality Under Rule 23(a)(2)

Under the commonality prerequisite of Rule 23(a), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). The U.S. Supreme Court has clarified that this prerequisite will be found where a proposed class' members have brought claims that all centrally "depend upon [the resolution of] a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only allege injuries "derive[d] from defendants' . . . unitary course of conduct. . . ." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, Class Members bring claims that centrally depend on the resolution of a common Contention – whether the Products' labeling would mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-10 (S.D.N.Y. 2015); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014). Thus, the commonality prerequisite of Rule 23(a) is satisfied here.

### 3. Typicality Under Rule 23(a)(3)

Under the typicality prerequisite of Rule 23(a), plaintiffs must show that their proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3).  The Second Circuit has interpreted this prerequisite to require plaintiffs to show that "the same

14

unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. . . ." *Robidoux*, 987 F.2d at 936–37 (citations omitted).

District courts in this Circuit, moreover, have repeatedly found this prerequisite easily satisfied, particularly in consumer class action cases. *See Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014); *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (E.D.N.Y. 2005) ("The typicality requirement is not demanding." (internal citations and quotation marks omitted)).

Here, the claims of the Class Representatives are typical of the Class' claims. The Plaintiffs and the rest of the Class, all purchasers of the Products, challenge the slack-fill in the Products and contend that the boxes were misleading. As with the numerosity and commonality prerequisites, the typicality prerequisite is met.

### 4.    Adequacy of Representation Under Rule 23(a)(4)

Finally, under the adequate representation prerequisite of 23(a), plaintiffs must show that their proposed class representatives will "fairly and adequately protect the interests of the [proposed] class." Fed. R. Civ. P. 23(a)(4). To do this, plaintiffs must demonstrate that: (1) their class representatives do not have conflicting interests with other class members; and (2) their class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

Courts in this Circuit have consistently applied a lenient standard for meeting both of the adequate representation prerequisites. *E.g., Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16, 20–21 (E.D.N.Y. 2014). For the first requirement (adequacy of class representatives), Second Circuit courts have required that plaintiffs merely show that "no fundamental conflicts exist" between a class' representative(s) and its members. *See Charron*, 731 F.3d at 249. For the second

15

requirement (adequacy of class counsel), courts in the Second Circuit generally presume it met, only finding it not met in instances where class counsel represents other clients whose interests are inherently at odds with the class' interests or also acts as a class representative. *See, e.g., Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984).

Here, the adequate representation prerequisite is satisfied. The Plaintiffs have no fundamental conflicts with other Class Members' interests, as they seek the same type of relief (injunctive relief) and assert the same legal claims, as other Class Members. They have diligently served as class representatives throughout this litigation, conferred with counsel regularly and were always available during the settlement discussions with the Court.

Similarly, Class Counsel are qualified, experienced and able to conduct the litigation and have extensive experience in class action litigation and consumer advocacy. *See* Firm Resumes, Jt. Decl. at Exhibits 2 and 3.  Thus, the adequate representation prerequisite is met.

### B.    The Class Meets the Requirements of Rule 23(b)(2)

In addition to satisfying all Rule 23(a) prerequisites, a settlement class must also satisfy Rule 23(b). Fed. R. Civ. P. 23(b). The Class, as a class seeking injunctive relief, meets all Rule 23(b)(2) requirements, and the Court should preliminarily certify it.  Rule 23(b)(2) reads: "A class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." *Id.*  The Second Circuit has interpreted this to mean that class-wide injunctive relief must provide benefit to all class members (even if in different ways).  *Sykes*, 780 F.3d at 99 (citing *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2555–61); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (holding the same).

Plaintiffs here seek only class-wide injunctive relief. Like the class members in *Sykes*, this relief would, in remedying the Products' labeling, benefit each Class Member at once.  Equitable relief in the form of an injunction would be an appropriate remedy. *See Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, at *71 (E.D.N.Y. July 17, 2013). Accordingly, the Class should be found to meet Rule 23(b)(2); and, as the Class also satisfies the Rule 23(a) prerequisites, the Class should be preliminarily certified for injunctive relief.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). In addition, courts have discretion over whether to require that settling parties provide notice of a proposed settlement of a Rule 23(b)(2) action to a class. *See* Fed. R. Civ. P. 23(c)(2)(A) (leaving notice at the discretion of the court for Rule 23(b)(2) actions); *see, e.g., Lilly*, 2015 U.S. Dist. LEXIS 57637 at *6; *see also Jermyn v. Best Buy Stores, L.P.*, 2012 U.S. Dist. LEXIS 90289, at *33 (S.D.N.Y. June 27, 2012) (action alleging misleading advertising of electronics). For a Rule 23(b)(2) class such as the one in this Settlement, Rule 23(c)(2)(A) states that "the court may direct appropriate notice to the class." Here, the Parties have developed a notice program with the assistance of KCC, a company that specializes in the development and implementation of notice and settlement administration.  In KCC's expert opinion, the proposed Notice Plan provides the best notice practicable under the circumstances to the members of the Class and is compliant with Rule 23(c)(2)(B). Plaintiffs request that the Notice plan be approved.

### A.    The Notice Plan

The Notice Plan includes: (a) comprehensive web-based notice using ads on targeted websites based on sales of the Products; (b) additional web-based notice using "keyword" searches

displaying ads; (c) social media ads targeting relevant interest areas; (d) a dedicated, informational website through which Class Members can obtain more detailed information about the Settlement and access case documents, including the Notice; and, (e) a toll-free telephone helpline by which Class Members can obtain additional information about the Settlement and request the Notice. A copy of the Notice is attached as Exhibit B to the Settlement Agreement.

### B.    The Proposed Notice Plan is Adequate and Appropriate

The Court is given broad power over which procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness imposed by the due process clause. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (the court "has virtually complete discretion as to the manner of giving notice to class members."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d. Cir. 2005).

The proposed Notice Plan meets the notice guidelines established by the Federal Judicial Center's Manual for Complex Litigation, 4th Edition (2004), as well the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), and is consistent with notice programs approved previously by both State and Federal Courts.

This proposed method for providing notice to the Class is reasonable and should be approved. Notice to the Class will be achieved shortly after entry of the Preliminary Approval Order. The Notice will be provided to Class Members so they have sufficient time to decide

whether to participate in the settlement, object, or opt-out.[2]  The Notice provides sufficient detail. It defines the Class, explains Class Members' rights, releases, and applicable deadlines, and describes in detail the injunctive terms of the Settlement. It plainly indicates the time and place of the hearing to consider approval of the Settlement, and the method for objecting to or opting out of the Settlement. It details the provisions for payment of attorneys' fees and expenses and case contribution awards to the class representatives, and provides contact information for Class Counsel. The Notice Plan provides numerous methods for Class Members to learn of the Settlement.  It requires publication and advertising on line and the creation of a website to disseminate in-depth information. The Notice informs Class Members of the Fairness Hearing, elements of the Settlement, and certification of the Class. Accordingly, Plaintiffs respectfully request approval of the proposed Notice Plan.

## VII.    THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING

Finally, the Court should schedule the time, date, and place of a Fairness Hearing to decide whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In so doing, the Court would determine whether to grant final approval to the Settlement, as well as address Class Counsel's request for attorneys' fees, costs, and expenses, awards to the Class Representatives and any objections to and exclusions from the settlement.

In order to comply with the various notice procedures and afford Class Members sufficient time to review the papers in support of final approval, communicate with Class Counsel or file any objections or requests for exclusion, the Parties respectfully request that the Court schedule a Fairness Hearing no earlier than 100 days from preliminary approval.

---

[2]     The Notice includes a new address for Harwood Feffer LLP who will be moving offices shortly after the submission of these papers.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) provisionally approve the settlement; (2) certify the Class for the purpose of settlement; (3) approve the form and manner of notice to the Class; and, (4) set a date and time for the Fairness Hearing.

Dated: April 25, 2018

**HARWOOD FEFFER LLP**

**/s/** Daniella Quitt
Robert I. Harwood
Daniella Quitt
488 Madison Ave., 8th Floor
New York, New York 10022
Tel.: (212) 935-7400
Fax: (212) 753-3630

**SARRAF GENTILE LLP**

/s/ Ronen Sarraf
Joseph Gentile
14 Bond Street, Suite 212
Great Neck, New York 11021
Tel: (516) 699-8890
Fax: (516) 699-8968

*Counsel for Plaintiffs*
