UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALESSANDRO BERNI, GIUISEPPE SANTOCHIRICO, MASSIMO SIMIOLI, and DOMENICO SALVATI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARILLA G. e R. FRATELLI, S.p.A., and BARILLA AMERICA INC. d/b/a BARILLA USA,<br><br>Defendants. | Case No. 1:16-cv-04196 |

## **PLAINTIFFS' RESPONSE TO OBJECTION FILED BY ADAM E. SCHULMAN**

Pursuant to the Court's Order preliminarily approving this Settlement, dated June 12, 2018, Docket Entry ("DE") 57, Plaintiffs respectfully submit this response to the Objection of Adam E. Schulman to the Proposed Settlement (the "Objection"), DE 62.[1]

## **THE RELEVANT FACTS**

**The Objector**

Mr. Schulman, an attorney with the Center for Class Action Fairness ("CCAF"), "represents class members against unfair class action procedures and settlements."[2] CCAF is a non-profit public-interest law firm that purports to "represent[s] class members *pro bono* in class actions . . . ." Schulman Declaration at ¶¶ 13-14. In 2015, CCAF merged into the Competitive

---

[1] On November 16, 2018, Mr. Schulman filed: (i) the Objection; (ii) Declaration of Adam Schulman ("Schulman Declaration"), DE 62-1; and, (iii) Notice of Intent to Appear, DE 63. Unless otherwise set forth, all capitalized terms used herein have the meanings ascribed to them in the Class Action Settlement Agreement, filed with the Court on April 25, 2018, DE 55-1.

[2] Competitive Enterprise Institute, Class Action Fairness (https://cei.org/issues/class-action-fairness).

Enterprise Institute ("CEI"). *See id.* ¶ 13. CEI describes itself as a "non-profit public policy organization dedicated to advancing the principles of limited government, free enterprise, and individual liberty."[3] Mr. Schulman is paid a salary by CEI. *See id.* ¶ 18.

CEI is funded by large corporate donors,[4] including Monsanto, the Koch brothers, and Pepsico, Inc., the owner of several packaged-foods brands including Frito-Lay, Quaker Oats, Doritos, Cheetos, Tostitos, and others. *See* http://www.pepsico.com/brands. As such, the source of Mr. Schulman's compensation appears to be from, among others, the very entities often sued in class actions and/or subject to slack-fill regulations. While Mr. Schulman's professional occupation is objecting to class action settlements, which he has done 58 times in the past five years, he takes issue with being labeled a "professional objector." *Id.* at ¶ 17, 23.

Mr. Schulman claims that the Settlement "fails to produce any compensatory value for class members" because he himself was not harmed by Barilla's practice. Objection at 1, 21. It is not clear if Mr. Schulman is a Class Member given, among others, the absence of any evidence regarding when he bought Barilla specialty pastas or if the pasta he purportedly bought was also sold in similarly-sized boxes containing substantially more amounts of similarly-shaped pasta. *See* Schulman Declaration at ¶ 4-5 and Exhibit A (picture of 12 oz box of Stelline pasta and a 12 oz box of Tri-Color Penne).

---

[3] Competitive Enterprise Institute, About (https://cei.org/about-cei).

[4] *See* Juliet Eilperin, WASHINGTON POST, *Anatomy of a Washington Dinner: Who Funds the Competitive Enterprise Institute?* (June 20, 2013) (available at https://www.washingtonpost.com/news/the-fix/wp/2013/06/20/anatomy-of-a-washington-dinner-who-funds-the-competitive-enterprise-institute/?utm_term=.c8c5a7f7ef55). CEI also receives substantial funding from the Donors Trust and Donors Capital Fund – entities whose own donors remain undisclosed. *See* Suzanne Goldenberg and Helena Bengtsson, THE GUARDIAN, *Secretive Donors Gave US Climate Denial Groups $125m Over Three Years* (June 9, 2015) (available at https://www.theguardian.com/environment/2015/jun/09/secretive-donors-gave-us-climate-denial-groups-125m-over-three-years).

# ARGUMENT

## I. The Objection is Meritless

The Objection is without merit and should be overruled for several independent reasons. First, the Objection fails to discuss the specific claims asserted here, namely the applicable slack-fill regulations. Indeed, the Objection mentions the word "slack-fill" *only once*. *See* Objection at 7. Nowhere does the Objection discuss or even cite the actual slack-fill regulations at the heart of this Action or the evidence presented in support of those regulatory violations. Rather, the bulk of the materials presented by Mr. Schulman are boilerplate criticisms of class actions and the lawyers who file them.

Second, Mr. Schulman regards himself as immune from slack-fill deception and believes that on that basis no consumer could be misled by non-functional slack-fill.[5] Those personal observations are at odds with the applicable slack-fill regulations which specifically state that a food is "deemed to be misbranded" and "misleading if it contains nonfunctional slack-fill." Federal Food Drug and Cosmetic Act ("FDCA"), 21 C.F.R. 100.100. Equally at odds with Mr. Schulman's opinions are other applicable regulations which provide, among others, specifically that: accurate weight does not exculpate misleading non-functional slack-fill (58 Fed. Reg. 61,423, 64,128-29); package size is a representation of quantity (58 Fed. Reg. 64,131); and,

---

[5] *See* Objection at 21 ("The preexisting labels on Barilla products *already* make crystal clear that the product is sold by weight and not by volume"; "Selling pasta by volume is particularly nonsensical as it isn't a product that well-adjusted humans consume raw. Plaintiffs believe that measurements of weight fall beyond the ken of ordinary American consumers and instead we need pictures and lines to understand basic quantitative concepts. However, plaintiffs are wrong about the capability of reasonable consumers" (emphasis in original)); Schulman Declaration at ¶ 8 ("As a consumer, my concern is the mass of the pasta product in the box. Because I do not eat the pasta uncooked, the pre-boiled volume of the pasta is of absolutely no relevance to me. Even if I cared about the volume of pasta in the box . . . I can easily rotate and jostle the product to get a good sense of what portion of the box is full."); Schulman Declaration at ¶ 9 (noting that a "labeling disclaimer" or fill-line are of no value because "these facts are readily apparent to me and other consumers of ordinary intelligence from existing labeling on the box conspicuously listing the net weight of the product, the recommended serving size and the number of servings").

consumers do not need to manipulate packages in order to determine the amount of slack-fill (58 Fed. Reg. 64,128). *See also* N.Y. Agric. & Mkts. Law § 201; 24 R.C.N.Y. Health Code § 71.05(d). Accordingly, Mr. Schulman's criticisms of this Settlement are misplaced and better aimed at the legislative and rule-making process that created slack-fill regulations rather than the judicial system charged with enforcing them.

Third, Mr. Schulman was admittedly not misled by Barilla's non-functional slack-fill. *See infra* note 5. While it is unclear if Mr. Schulman is or is not a class member, there is no question that he was not, and would never be, harmed by Barilla's conduct. Accordingly, Mr. Schulman lacks Article III ("injury in fact") standing to bring a claim and would be precluded from serving as a plaintiff in this or any other slack-fill case.[6] Because Mr. Schulman is uninjured and purportedly incapable of being injured by nonfunctional slack-fill, he has admittedly "no stake" in the outcome of this litigation—other than advancing the interests of his employer or corporate benefactors. On this basis alone, Mr. Schulman's objection should be overruled.

Fourth, the Objection ignores the fact that this Settlement obtained almost precisely what it sought—an end to Defendants' slack-fill violations. Class Counsel are hard-pressed to find a

---

[6] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (confirming the "irreducible constitutional minimum" of Article III standing in that a plaintiff must suffer an "injury in fact").

> It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy. Plaintiffs must demonstrate a "personal stake in the outcome . . . ." Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (internal citations omitted).

4

case whose resolution is so consistent with the claims alleged and the relief sought. Plaintiffs got exactly what they wanted. While Mr. Schulman sees no value from a "minimum fill line" and finds that the "pre-boiled volume of the pasta is of absolutely no relevance to me," the applicable slack-fill regulations demand otherwise. It is Class Counsel's opinion that a jury—the time and expense of which this Settlement seeks to avoid—would no doubt vindicate Plaintiffs' position and the fact that these slack-fill regulations were violated. However, securing immediate and broad injunctive relief specifically-tailored to address the alleged claims, while dispensing with the risks, expenses, and uncertainties of trial and appeal, are precisely the kinds of class resolutions that warrant Court approval. As set forth in the Settlement Agreement, Barilla agreed to make the changes as a result of the Action. Settlement Agreement at ¶ 2.1. In light of this, it is false to suggest, as Mr. Schulman does, that the only "concrete component" of the Settlement is the payment of fees, awards, and costs. Objection at 7.

Fifth, not only did the Action achieve its desired result, but the label modifications provided by this Settlement are directly in-line with the regulations governing non-functional slack-fill. For example, California has not only prosecuted slack-fill violations, but very recently (after this Settlement was preliminarily approved) amended its own slack-fill regulations to indicate that the appearance of a "fill line" on the packaging will serve as a statutory safe harbor.[7] Accordingly, the label modifications presented by this Settlement offered an injunctive remedy to slack-fill violations that a leading legislature subsequently adopted. The value of this

---

[7] For example, in June 2015, California fined Proctor and Gamble $850,000 for violating slack-fill regulations. *See* https://yoloda.org/the-proctor-and-gamble-company-to-pay-850000-in-consumer-protection-settlement/. In September 2018 California amended its own slack-fill regulations to provide an additional statutory safe harbor, such that if a product package contained a "fill line" it would not be a violation of the slack-fill regulations. *See* https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180AB2632.

Settlement—as endorsed by the very regulators that enforce slack-fill violations—beyond dispute.

Sixth, while Mr. Schulman references in a footnote Class Counsel's actual time litigating this case (and blindly speculates what a reduced blended hourly rate might be), Mr. Schulman largely ignores Class Counsel's efforts and simply dismisses the fact that the requested attorneys' fees are less than the incurred lodestar. Objection at 23 (note 11).  To be sure, Class Counsel conducted a substantial pre-filing investigation, retained and conferred with an industry expert, and devoted enormous amounts of time prosecuting this case without any assurance of success or payment. It is also undisputed that Class Counsel refused to negotiate attorneys' fees until after the terms of the injunctive relief were finalized, and that the fees ultimately negotiated and sought are *less* than Class Counsel's lodestar.  Far from a windfall, Class Counsel's fee request is modest and less than their actual lodestar and as set forth in prior filings the hourly rates are consistent with rates approved in this Circuit and elsewhere.  Also, as indicated in Class Counsel's opening motion papers, approval of such a fee is consistent with prior court awards.[8]

Finally, the principal cases on which Mr. Schulman relies[9] are factually distinguishable from this Action.  For example, the proposed settlement in *Pampers* involved a $2.7 million attorneys fee award based on the reinstatement of a refund program that defendants had *previously* instituted (requiring onerous obligations to retain original purchase material and

---

[8] As the Court is aware (but ignored by Mr. Schulman) Class Counsel's requested fee is inclusive of roughly $35,000 in case expenses–which include the retention of an industry expert and the costs associated with providing notice of the Settlement.  As detailed in Class Counsel's submission in support of final Settlement approval, these reimbursable expenses reduce the actual requested fees to roughly $415,000. *See* Joint Declaration of Daniella Quitt and Ronen Sarraf ¶ 72, DE 60.

[9] *See* Objection at 1, citing *In re Dry Max Pampers Litig.* ("*Pampers*"), 724 F.3d 713 (6th Cir. 2013), *In re Subway Footlong Sandwich Mkt'g & Sales Practices Litig.* ("*Subway*"), 869 F.3d 551 (7th Cir. 2017), and *Ma v. Harmless Harvest, Inc.*, ("*Harmless Harvest*"), No. 16-cv-07102 (JMA) (SIL), 2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018).

which defense counsel conceded the parties had failed to prove was fair) and label modifications that essentially directed consumers to the defendant company's own website for additional diaper-related issues. Similarly, the proposed settlement in *Subway* involved a $525,000 attorneys' fee award based on an injunction that formalized Subway's *pre-existing* efforts to ensure that all footlong sandwiches would be 12 inches long, while simultaneously acknowledging that not all footlong sandwiches would be 12 inches long. Likewise, the proposed settlement in *Harmless Harvest* (which was filed 4 days after the case commenced) involved a $555,000 attorneys' fee and $20,000 plaintiff award based on the removal of the words "organic" and "raw" from the product label, which the defendant company voluntarily removed before the suit was filed (the word "raw" was actually removed prior to service of any pre-suit demands) in exchange for a broad release that included not only the subject products but all claims related to the ingredients used in the making of the subject products. As explained above, these three examples are drastically different from the Settlement proposed here.

## II. The Objection Should Be Overruled

In the end, the principal question is whether the Settlement, after considering the alleged conduct, the applicable rules, the costs and risks of further litigation, the label modifications, and the requested fees, is in the best interest of the Class. Class Counsel submit, that after considering these factors, the answer is unequivocally yes. The agreement by Barilla to provide an unambiguous fill-line and corresponding label modifications (rather than continued litigation with the possibility of no recovery at all) is in the best interest of the Class.

Mr. Schulman's defective and boilerplate criticisms should be rejected and the Objection overruled.

## CONCLUSION

For the foregoing reasons, the Settlement should be approved in its entirety.

Dated: December 10, 2018             Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

/s/ Daniella Quitt
Robert I. Harwood
Daniella Quitt
712 Fifth Avenue, 31st Floor
New York, New York 10019
Tel.: (212) 935-7400
Fax: (212) 753-3630

**SARRAF GENTILE LLP**

/s/ Ronen Sarraf
Ronen Sarraf
Joseph Gentile
14 Bond Street, Suite 212
Great Neck, New York 11021
Tel: (516) 699-8890
Fax: (516) 699-8968

*Counsel for Plaintiffs*