# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

ALESSANDRO BERNI, GIUISEPPE SANTOCHIRICO, MASSIMO SIMIOLI, and DOMENICO SALVATI, on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.

BARILLA G. e R. FRATELLI S.p.A. and BARILLA AMERICA, INC. d/b/a BARILLA USA,

    Defendants.

Case No. 1:16-cv-04196(ENV)

## BARILLA'S RESPONSE TO OBJECTION FILED BY ANDREW SCHULMAN

Defendant Barilla America Inc. ("Barilla") responds as follow to the Objection of Adam Schulman to Proposed Settlement (the "Objection").

## INTRODUCTION

The settlement in this matter arose out of a series of mediation sessions conducted by this Court. CAFA notice was provided in this case to public officials including the Attorneys General of all 50 states and the United States Territories, as well as the Attorney general of the United States. None of these officials has objected to the settlement or otherwise criticized its terms. The sole objection comes from a professional objector based on a flawed understanding of the claims at issue. Based on this misunderstanding of the underlying claim, the Objection incorrectly asserts that the injunctive relief obtained by the proposed settlement (the "Injunctive Relief") is of no value. At the same time the Objection (perhaps unintentionally) correctly concedes that the claim at issue is one on which the Plaintiffs had little to no chance of prevailing, thus making a settlement all the more likely to be considered "fair, adequate and

reasonable." *Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318, 339 (E.D.N.Y. 2007) (when claims are weak, settlement need only provide minimal value).

As discussed in detail below, Plaintiff's claims were extremely weak and unlikely to be successful and, in any event, the Injunctive Relief provides a complete solution to the purported "problem" raised by the Plaintiffs' complaint. This Court should find the Objection to be without merit and grant final approval of the proposed settlement (the "Proposed Settlement").

## ARGUMENT

### I. The Nature of Plaintiffs' Claim and the Relief Provided by the Proposed Settlement

As noted above, the Objection fails to discuss the claim at issue here. Although insisting that the Injunctive Relief is of "no value," the Objection gives lip service to the relief despite taking 25 full pages to lodge the objection. And, importantly, the Objection fails to discuss that relief in relationship to the claim that was made. The nature of the claim and the relationship to the relief offered by the Injunction are crucial facts to a determination of the propriety of the proposed settlement. Those facts which are absent from the Objection, are as follows:

The First Amended Complaint (the "Complaint") is premised on one thing: a contention that consumers are deceived into believing that there is more pasta by volume in boxes of some types of Barilla pasta (the "Specialty Pasta") then they actually contain. Plaintiffs contend that this alleged deception occurred because: i) Barilla's boxes are mostly opaque and thus consumers are deceived because they can't tell exactly how much pasta in the box; and ii) boxes of Barilla "traditional" pasta products are packaged in the same size packages but with more pasta. Plaintiffs claim that Barilla's conduct with respect to the packaging of the Specialty Pasta violated New York's General Business Law § 349(a) which "makes unlawful deceptive acts or

practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State." (Am.Comp. ¶).

Plaintiffs' claim is premised on the allegations that "because the boxes are predominantly made of opaque cardboard, prior to purchase consumers **cannot see that the specialty pasta boxes contain significant empty space"** and that "by selling the specialty pastas with hidden non-functional slack-fill, Barilla deceives consumers, who are led to believe that each box is full of pasta, when it actually contains significant hidden empty space." (*Id.* at ¶¶s 3-5, emphasis supplied). The Complaint states that Plaintiffs' claims are based on issues with the *volume of pasta product* in the box and makes no claims based on the weight of the pasta in any box. See, Am. Comp. ¶18 (Plaintiffs claims are independent of the weight labels on Barilla's pasta boxes.") Indeed, the Complaint makes clear that the purported claims of deception are premised solely on the presence of alleged non-functional "slack-fill." and, as the Complaint states, "slackfill" is by definition a reference to the *volume* of a product in a box. (Am. Comp. ¶35, 50.) See also, Am. Compl. ¶¶s 17 and ¶ 26 ("Barilla relies on consumer familiarity with the box size and appearance…- to mislead consumers into thinking they are purchasing the same **volume of pasta** when, in reality, [Barilla] is…selling specialty pastas in boxes that contain substantially more **hidden empty space**, and less pasta, than they appear to."). The Complaint also makes clear that the Plaintiff contends that a reasonable consumer need not manipulate a package physically to determine the volume of pasta inside. (*Id*. at ¶36.)

The Injunctive Relief which is to be effected pursuant to the Proposed Settlement fully alleviates the entire issue raised as the basis for the deception by requiring Barilla to place a "minimum fill line" on the outside of every box of Specialty pasta and also advises the consumer that "the amount of product in this box may differ from the amount contained in similarly-sized

3

boxes." Thus, the amount of pasta that is placed into the box by Barilla will no longer be "hidden," curing the "problem" which forms the basis for Plaintiffs claim in this matter. The Injunctive Relief therefore provides indisputable value with respect to Plaintiffs' claims by assuring that just by simply looking at a pasta box all consumers would have visual information about the volume of pasta in each box of Specialty Pasta.

The Objection, however, disputes that the Injunctive Relief has any value and claims that as a result the Proposed Settlement is not "fair, adequate and reasonable." But the arguments raised in support of this contention are fatally flawed for several reasons, which are detailed below. First, in making the argument that the Injunctive Relief is without value, the Objection essentially concedes that Plaintiffs' claims were of little or no merit and that Plaintiffs could not have succeeded to recover any damages. As explained below, such a concession essentially supports a finding that the Proposed Settlement is "fair, adequate and reasonable." Moreover, decisions in several recent cases, including one involving the exact same facts as the case at bar, confirm that the claims at issue here are meritless.

**II. The Objection Concedes (and recent case law confirms) the Meritlessness of Plaintiff's Claims thus Supporting a Finding that the Injunctive Relief Provided by the Settlement is Fair, Adequate and Reasonable.**

In assessing the adequacy of a proposed settlement, federal courts consider the relative strength of the plaintiffs' case on the merits, and when it is very weak, it supports a finding that the settlement is fair, reasonable and adequate. See, *Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318, 339 (E.D.N.Y. 2007) (claim which cannot be proven is worth essentially nothing and requires little or no consideration to be considered fair, reasonable, and adequate); *Weinberger v. Kendrick*, 698 F.2d 61, 79 (2d Cir. 1982) (taking into account that the "claims were extremely weak" in finding that the "the proposed settlement's treatment of such claims

was fair and adequate.")  See, also, *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 142 (E.D.N.C. 2018 (same); *Leverage v. Traeger Pellet Grills, LLC*, 2017 WL 2797811, at *5 (N.D. Cal. June 28, 2017) (reasonable to settle a weak claim for relatively little); *Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan*, 08-61018-CIV, 2011 WL 13173025, at *8 (S.D. Fla. July 12, 2011) ("benefits flowing from the Settlement are of particular value when compared to the strength of the claims in this case.")

Here, the Objection itself concedes the weakness of Plaintiffs' Claims. As noted above, Plaintiffs bring their claims under New York's consumer fraud law alleging that Barilla's opaque packaging would have deceived a consumer with regards to the volume of the pasta in Barilla's Specialty Pasta Products. To prevail on such a claim, Plaintiffs must establish that Barilla's allegedly deceptive packaging was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In order to prevail under the NY consumer fraud law, the court must find that that "a reasonable consumer in like circumstances would consider the misrepresentation **material**." *Daniel v. Tootsie Roll Indus., LLC*, 17 CIV. 7541 (NRB), 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018) (emphasis in original). And, the deception "must be probable, not just possible." *Fermin v. Pfizer Inc.*, No. 15 CV 2133 (SJ) (ST), 2016 WL 6208291, at *2 (E.D.N.Y. Oct. 18, 2016). Here, the Objection admits that it is not probable that a reasonable consumer would be materially deceived in the way that Plaintiffs claim.

Specifically, the Declaration attached to the Objection states that it was not necessary for Barilla's packages to contain a fill-line which would allow a consumer to determine the volume of the pasta in the box because one could "easily rotate and jostle the product to get a good sense of what portion of the box is full." (*See*, Schulman Declaration at ¶8.) This statement fully

undermines Plaintiffs' claims that because Barilla's boxes are opaque, a reasonable consumer would somehow likely be deceived as to the volume of the pasta in the boxes.

The Declaration also wholly undercuts the Plaintiff's only other basis for the purported deception: That because Barilla's Non-Specialty Pasta Products are sold in similar sized containers yet contain less product than the traditional "Blue Box", a reasonable consumer would supposedly be deceived when purchasing Specialty Pasta. The Declaration concedes that there is no merit to this claim by asserting that the fact that the amount of the product in a box of Specialty Pasta may differ from similarly sized boxes of other Barilla pasta products is "readily apparent to me and other consumers of ordinary intelligence [based on] existing labeling on the box conspicuously listing the net weight of the product, the recommended serving size and the number of servings." (Schulman Declaration at ¶9.)

The Objection on its face concedes that, contrary to Plaintiffs' claims in this matter, no reasonable consumer would be deceived by Barilla's packaging in the manner alleged by the Amended Complaint. The Objection has therefore admitted that Plaintiffs' claims were of no merit, just as Barilla has asserted in a motion to dismiss Plaintiffs' Complaint.[1] This concession essentially acknowledges that Barilla would have been successful on its motion to dismiss and that Plaintiffs' claims are worthless.

Moreover, this concession is confirmed by the recent decisions of federal courts which have ruled on claims that are identical to, or very similar to, the claims that Plaintiffs have made in this case. For example, in a case from this District which made claims identical to the ones made by Plaintiff here, the court held as a matter of law that the purported underfilling of pasta in opaque boxes would not mislead a reasonable consumer. *Stewart v. Riviana Foods Inc.*, 16-CV-6157 (NSR), 2017 WL 4045952, at *10 (S.D.N.Y. Sept. 11, 2017). *Stewart* involved another

---
[1] The Motion to Dismiss was pending when the parties reached the Proposed Settlement.

pasta manufacturer (Ronzoni) and the claims against it were exactly the same as the ones made against Barilla here, including claims that consumers were deceived because Ronzoni's specialty pasta products were sold in the same size boxes as other types of its pasta, but contained less product by volume. *Id.* The *Stewart* court held that no reasonable consumer would be materially deceived by the differences in volume between boxes of specialty pasta and other pastas in the defendant's product line. The court noted (as is true here) that the specialty pasta was in boxes that looked quite different from the other pasta products, but that "even assuming nearly identical boxes, the weight and price of the dry good are clearly the most material aspect of this type of product" and thus that the plaintiffs could not plausibly allege a claim under New York's consumer fraud law based on the type of claims that Plaintiffs made here, i.e., based on the volume of the pasta in the boxes. *Id.*

In another very recent case dealing with similar issues, another court held that the type of claims made here could not prevail because the opaque boxes provided "more than adequate information for a consumer to determine the amount of Product contained therein." *Daniel v. Tootsie Roll Indus., LLC*, 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018). The information provided on the boxes in the *Daniel* case was the exact same information that the Objection concedes was present on boxes of the Specialty Pasta: "standard (ounces) and metric (grams) displayed on the front of each Product box and as well as information regarding "serving size" and "the number of servings in each box which was displayed… on the back of each box." (*See*, *Daniel* at *13, Schulman Dec. at ¶ 9 and *e.g.*, Amended Complaint at ¶21, containing pictures of a representative box.)

Moreover, the court in *Daniel* expounded on why the types of volume-based claims that Plaintiffs brought here cannot prevail under the NY consumer fraud laws. The court found that

consumers "care about the density or volume of a product only as it relates to the amount or quantity of food." *Daniel* at *14. Noted the court, "[c]onsumers receive the same amount or quantity or food, as provided on the label, regardless of… the container is larger than necessary." *Id.* Thus said the *Daniel* court, given that the "products' weight appears on the front of the package [and] the ease with which consumers can calculate the [amount of product in the box]…we conclude as a matter of law that no reasonable consumer would be misled by the presence of slack-fill, even assuming it were non-functional, in the products' packaging." *Id. Daniel* confirms that no reasonable consumer would have materially been deceived by Barilla in the manner that Plaintiffs' claim.

A similar confirmation of the lack of merit of Plaintiffs' claims can be found by a ruling in another case from this district: *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177 (E.D.N.Y. 2018) (the case was filed by a different plaintiff with the same surname as the plaintiff in the Southern District *Daniel* case, and will be referred to herein as "*Mondelez*"). In *Mondelez*, the court noted the rulings in many other courts (including a district court within the Second Circuit) that "held that reasonable consumers would not be misled by non-functional slack-fill as a matter of law where the products clearly disclosed accurate net weight and/or the total product count." *Id*. citing, *Fermin v. Pfizer Inc.*, 215 F.Supp.3d 209, 212 (E.D.N.Y. 2016); and also, *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Bush*, 2016 WL 5886886, at *3.

The *Mondelez* court also agreed with those courts that have held that "a reasonable consumer would take into consideration additional factors aside from package size." *Id*.; *United States v. 174 Cases, More or Less, Delson Thin Mints Chocolate Covered*, 195 F.Supp. 326, 328 (D.N.J. 1961) (finding for defendant while based, inter alia, on the fact that that "[t]he correct net weight of the candy is disclosed on the wrapper of the accused package), *aff'd*, 302 F.2d 724 (3d

Cir. 1962). Such an approach, said *Mondelez*, is "consistent with the Second Circuit's emphasis on context in determining whether a reasonable consumer would have been misled by a particular advertisement." *Id.* citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (affirming judgment of district court dismissing complaint alleging violation of various state consumer protection statutes including GBL Section 349.)

The *Mondelez* court like the court in *Daniel* rejected the idea that the type of volume-based claims which focus on the size of the box (like those made by Plaintiffs in the case at bar) could form a basis for liability under New York's consumer fraud statute which requires that the deception be **material**. *Id.* at 193-4, citing, *Wurtzburger v. Kentucky Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) ("[T]he use of a larger than necessary [container]–is not materially deceptive or misleading... nor is it misleading, as defined by [section 349], that [d]efendant could have or should have used a smaller [container] for the amount of food packaged or provided."); *Waldman*, 714 F.Supp.2d at 403 (dismissing fraud claim for lack of materiality because plaintiff failed to plead facts that she or other class members "cared about [the product's] density" in and of itself or that the "higher density deluded her, or other class members, into thinking that [the product] box contained more than the thirty servings it expressly listed"); and *Bautista*, 223 F.Supp.3d at 192 n.8 (for the same proposition).

The *Mondelez* court thus dismissed the plaintiff's slack-fill claims. *Mondelez, Id.* at 194. That decision, like the ones in *Stewart, Daniel* and others accessing New York's consumer fraud law strongly indicate that, as the Objection itself concedes, Plaintiffs here had little to no chance of success on the merits. *Id.; See* also, *Miao Xin Hu v. Iovate Health Scis. U.S.A. Inc.*, 2018 WL 4954105, at *2 (S.D.N.Y. Oct. 12, 2018) ("Generally, courts within this District have found that labels on packages that clearly indicate the product's weight prevent plaintiffs from succeeding

on nonfunctional slack-fill claims.") Given the clear weakness of Plaintiffs' claims, the Injunctive Relief provided by the Proposed Settlement should be found to be "fair adequate and reasonable" under the circumstances. *Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 142 (E.D.N.C. 2018) ("In assessing the adequacy of the proposed settlement courts considers the relative strength of the plaintiffs' case on the merits and when it is very weak it supports a finding that the settlement is fair, reasonable and adequate.") This is especially true because as set forth above, the Injunctive Relief indeed provided value to Plaintiffs.

**III.    The Assertion that the Injunctive Relief does Not Provide Value is Wrong and the Cases Cited are Wholly Inapposite.**

Much of the Objection is focused on the settlement providing only for Injunctive Relief. The Objection implies that such non-monetary relief is of little value and never adequate. But the law is to the contrary. *Grant v. Capital Mgmt. Services, L.P.*, 10-CV-2471-WQH BGS, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014). In *Grant*, the court found injunctive-only relief "fair and adequate" because "while this settlement does not include monetary relief for the Class, it stops the allegedly unlawful practices [and] bars Defendant from similar practices in the future." The *Grant* court noted that many other courts have also approved injunction-only settlements. *Id. See also, In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138, at *5 (D. Ariz. Aug. 31, 2010) ("Many courts have approved settlements where, as here, the consideration offered consists [solely] of injunctive relief.") This is especially true, when as here, the plaintiff's claims are weak. *Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318, 339 (E.D.N.Y. 2007)

Moreover, the assertion that the Injunctive Relief provides no value is based on an improper attempt to ignore the claim at issue and thus divorce it from the relief provided. But once the relief afforded by the Proposed Settlement is juxtaposed with Plaintiffs' claims in this matter, it becomes abundantly clear that the Injunctive Relief provides value with respect to

those claims. Specifically, as discussed above, Plaintiffs repeatedly make clear that their sole basis for their claims is the fact that a consumer cannot tell from the outside of the boxes of the Specialty Pasta products that they contain allegedly "hidden empty space" in other words, that the boxes do not allow a consumer to determine the volume of pasta in the box and that the boxes contain less pasta by volume than expected. (*See, e.g.* Am. Comp. ¶¶'s 27, 30, 32, 34.)

The Objection never even discusses the claim at issue. Instead, the Objection asserts that the Injunctive Relief is of no value even though it ensures that a consumer can easily discern the volume of the Specialty Pasta Product from the outside of the box. In support, the Objection argues that consumers do not buy based on volume, and that such information about volume is thus irrelevant. But this misses the point. It is certainly true that issues about the irrelevancy of volume of the product to consumers is an excellent basis for challenging the merits of Plaintiffs' claims. Indeed, Barilla itself did so in this litigation in a motion pending at the time of the Proposed Settlement. But relief which helps a consumer to confirm the volume of the pasta in the box and assists them with their expectations of how much pasta is in the box by volume is **completely** relevant to addressing the volume-based issues that form the basis for Plaintiffs' complaint. Because the Injunctive Relief at issue resolves the purported problem with the boxes of Barilla's Specialty Pasta Product, that relief unmistakably provides value vis-a-vis the claim made.

The cases cited in opposing the settlement lack relevance to the situation at bar. For example, the Objection relies heavily on a case from the Sixth District in support of the argument that the Injunctive Relief provides no value. See, Schulman Objection at P. 6, citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). But the *Pampers* case is wholly

inapposite because there the injunctive relief was totally divorced from the claims at issue and it was this fact that led the court to determine that such relief was of little value.

Specifically, in *Pampers,* the plaintiffs' claims were based on allegations that diapers manufactured by the defendant tended to cause severe diaper rash. *Id.* The court found no value for consumers who wished to raise such a claim in the settlement's requirement that the manufacturer place information on its website telling consumers how to treat mild cases of diaper rash and to see their doctor in the event of more serious rashes. But the sort of information afforded by the settlement in *Pampers* is very different than the sort required here. In *Pampers*, the information to be provided was *wholly unrelated to the issue raised in the plaintiffs' complaint*. Telling consumers how to treat diaper rash in no way even addressed the alleged problem, i.e. that the diapers caused the rash in the first place! But here, as detailed at length above, the information provided (which, *inter alia*, helps a consumer to determine how much pasta by volume is in Barilla's boxes of Specialty Pasta) was specifically related to and resolves the issue raised by the Plaintiffs' complaint (that Barilla's boxes don't give consumers information on which they can determine the volume of pasta in the box). *Pampers* provides no support for Objector's assertion that the Injunctive Relief provides no value.

The *Subway* case discussed at length also provides absolutely no support for the assertion that the Injunctive Relief fails to provide value. See, Schulman Objection at P. 5, citing *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 556 (7th Cir. 2017). Despite the insistence that "*Subway* is directly on point," the circumstances there are the complete opposite of those here. In *Subway*, the court found that the issue raised by the plaintiff's complaint (that Subway's sandwiches were shorter than advertised) would in no way be alleviated by the proposed settlement because even after the remedies required by the

12

settlement there was still the "same small chance that Subway would provide its customers with sandwiches that were shorter than advertised." *Subway* at 556.

The Objection in this case does not even attempt to assert that the relief under the settlement would not remedy the issues with Barilla's products that were raised by the Amended Complaint. Nor could it. As detailed above, the Injunctive Relief clearly helps to alleviate the alleged volume-based "problem" that formed the basis for Plaintiffs' claims. *Subway* is not "on point." It is wholly inapposite. The same is true for the remaining supposedly similar cases that the Objection relies upon. *See, e.g. Guoliang Ma v. Harmless Harvest, Inc.*, 16CV07102JMASIL, 2018 WL 1702740, at *7 (E.D.N.Y. Mar. 31, 2018); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 779 (7th Cir. 2014).

It is true that in *Ma*, the court found that injunctive relief which provided that the defendant would remove certain wording from its packaging provided "virtually nothing of value for the class." *Ma* at *7. But it did so only because the defendant had already removed that wording from its packaging before the settlement. *Id.* Thus, said the court "the purported injunctive relief does not require [the defendant] to do anything it had not already voluntarily decided to do." *Id*. *Ma* is irrelevant to the situation at bar where the change to Barilla's packaging will only occur based on the settlement. Also irrelevant is *Pearson*. There, the plaintiffs' claims were based on false statements on defendant's packaging concerning the efficacy of its vitamin products in treating joint disease. *Pearson* at 779. The court found that injunctive relief provided no value only because the proposed changes to the wording of the statement required by the settlement were substantively the same as the original statements; they did nothing to correct the issue raised by the plaintiff's claims. *Id.*

Here, the Objection has not (and could not) assert that the changes to Barilla's packaging left it substantively unchanged with regards to the ability of a consumer to visually tell how much pasta was in the box based on volume. Instead, unlike in *Pearson*, the Injunctive Relief here addresses and alleviates the issue raised by the Complaint. *Pearson*, like all of the other cases discussed by Objection does nothing to further its position. The bottom line is that whatever the merit of Plaintiffs' claims (and Barilla contends they are of little merit), the remedy provided by the Injunctive Relief directly addressed those claims and alleviates the purported "problem" with the packaging that Plaintiff contends caused them to be deceived. Given this fact, especially when coupled with the Objection's own concessions regarding the extraordinary weakness of Plaintiffs' claims, there are ample grounds for this Court to determine that the objection is baseless and that the Proposed Settlement is "fair adequate and reasonable." This Court should therefore grant final approval.

                                    **BARILLA AMERICA, INC., d/b/a**
                                    **BARILLA USA**

| **SHER TREMONTE LLP** | **MUCH SHELIST PC** |
|---|---|
| Michael Tremonte | /s/ Steven P. Blonder |
| Justin J. Gunnell | Steven P. Blonder (admitted *pro hac vice*) |
| 80 Broad Street, Suite 1301 | Jonathan D. Sherman (admitted *pro hac vice*) |
| New York, New York 10004 | Marissa L. Downs (admitted *pro hac vice*) |
| Tel: (212) 202-2600 | 191 North Wacker Drive, Suite 1800 |
| Fax: (212) 202-4156 | Chicago, Illinois 60606 |
| | Tel: (312) 521-2000 |
| | Fax: (312) 521-2100 |

# CERTIFICATE OF SERVICE

Steven P. Blonder, an attorney, certify that on December 10, 2018, a true and correct copy of ***Barilla's Response to Objection Filed by Andrew Schulman,*** to be electronically filed, which will send electronic notification of such filing to all parties of record.

/s/ *Steven P. Blonder*