UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ALESSANDRO BERNI, GIUISEPPE
SANTOCHIRICO, MASSIMO SIMIOLI, and
DOMENICO SALVATI, on behalf of themselves
and all others similarly situated,

                Plaintiffs,                **<u>MEMORANDUM AND ORDER</u>**

    -against-                       16-CV-4196 (ST)

BARILLA G. e R. FRATELLI, S.p.A., and
BARILLA AMERICA INC. d/b/a BARILLA
USA,

                Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

For the reasons set forth herein, the Court GRANTS the parties' Motion for Final Settlement Approval.

## BACKGROUND

This case is about the allegedly misleading empty space or "slack fill" in certain of Defendant Barilla America Inc.'s ("Barilla") specialty pasta products.[1] Plaintiffs, who purchased these products, claim that this slack fill misleads consumers into believing that they are receiving more pasta than they actually are.

Plaintiffs filed the complaint in this action on July 28, 2016, ECF No. 1, and an amended complaint on December 5, 2016, ECF No. 26 ("Am. Compl."). Plaintiffs claim that Barilla's use of slack fill in its specialty pasta boxes constitutes a deceptive business practice in violation of

---

[1] Although originally named as a defendant, Barilla G. e. R. Fratelli S.p.A., Barilla's Italian parent company, was dismissed from this action for lack of personal jurisdiction by virtue of the Court's Order Preliminarily Approving the Settlement. *See* ECF No. 57 at 2. Barilla's American subsidiary is thus the sole remaining defendant.

N.Y. Gen. Bus. Law § 349(a). Am. Compl. ¶¶ 47-54. They also claim, apparently in equity, that Barilla's sale of these products led to the company's unjust enrichment. Am. Compl. ¶¶ 55-57. Plaintiffs' amended complaint seeks, among other relief, compensatory and punitive damages and an injunction requiring Barilla "to repackage the specialty pastas without non-functional slack fill." Am. Compl. at 18.

Barilla filed a motion to dismiss the amended complaint on April 14, 2017. ECF No. 33. Barilla argued, essentially, that it is not plausible that a reasonable consumer would be deceived by the empty space contained in the specialty pasta boxes, that Plaintiffs lacked standing, and that the Court lacked jurisdiction over Barilla's Italian parent company. *Id*.

While the motion to dismiss was pending, the Court held three separate settlement conferences. *See* Minute Entries, ECF Nos. 40-42. Both parties appeared at each of these. At the third settlement conference, the parties reached a settlement agreement in principle. ECF No. 43. On April 19, 2018, the parties consented to the jurisdiction of this Court, ECF No. 51, and the case was referred to the Court by the District Court, ECF No. 52. On June 12, 2018, upon the parties' joint motion, the Court issued an order granting preliminary certification of the settlement class, approving the settlement, and directing issuance of notice to the class. ECF No. 57.

After notice was issued, one objection to final approval of the settlement was filed. ECF No. 62.  Mr. Adam E. Schulman, Esq. ("Mr. Schulman"), an attorney with the Center for Class Action Fairness, a non-profit advocacy group that opposes selected class action settlements, filed the objection.[2] *Id.* at 1. The parties each filed responses to Mr. Schulman's objection. *See* ECF No. 65 ("Pls.' Resp. to Obj."), ECF No. 67 ("Def.'s Resp. to Obj.").

---

[2] After filing his Objection, Mr. Schulman filed a Notice of Change of Firm indicating that the Center for Class Action Fairness has been reorganized under the Hamilton Lincoln Law Institute. *See* ECF No. 70.

The Court held a Fairness Conference on December 17, 2018 at which attorneys for the parties and Mr. Schulman appeared. *See* ECF No. 68. The Court heard oral argument on the objections raised by Mr. Schulman and on the overall fairness of the proposed settlement agreement. The Court reserved decision on the parties' motion for final approval of the settlement to consider the issues discussed at the Fairness Conference. *Id*.

The Settlement Agreement

The parties' proposed settlement agreement defines the class as:

> All consumers in the United States and all U.S. territories (including, but not limited to, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and the other territories and possessions of the United States), who purchased one or more of the Products from July 28, 2010 until the date of the preliminary approval of the settlement of this litigation [June 12, 2018]. Excluded from the Class are persons who timely and properly exclude themselves from the Class as provided in the Settlement Agreement.

ECF No. 60-1 ("Settlement Agreement") ¶ 6.1. The Products, in turn, are defined as:

> (a) All pasta products sold or marketed by Barilla containing less than one pound (16 ounces) of pasta including but not limited to Specialty Pastas which include all Gluten Free, Whole Grain, ProteinPlus, and White Fiber products or products described as Better For You.
> (b) Any new varieties of these specific product lines yet to be sold or marketed.

*Id.* ¶ 1.21.

The settlement agreement provides no damages to the class members. Instead, it provides that Barilla will modify the packaging of the specialty pastas to include a minimum fill line and a disclaimer noting that there is empty space in the box. *Id.* ¶ 2.1; *see also* ECF No. 60-4 (Proposed New Packaging). Because only injunctive relief is provided to the class, the parties seek certification of the class pursuant to Rule 23(b)(2). Settlement Agreement ¶ 2.1. While notice and an opportunity to opt out of the settlement are normally not required for a 23(b)(2) class, *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011), the settlement agreement here provides these

safeguards. *See* Settlement Agreement at 11-13.

> In exchange for the injunctive relief, the class members release:

> all causes of action, claims, suits, debts, damages, judgments, liabilities, demands
> and controversies whatsoever—whether matured or unmatured, now known or
> unknown, liquidated or unliquidated, at law or in equity, whether before a local,
> state or federal court, or state or federal administrative agency, commission,
> arbitrator(s) or otherwise—that the class members now have or may have, and for
> all times up to and including the date of final approval of the settlement, for all
> claims that were asserted or could have been asserted in the Action relating to the
> amount of pasta contained in a package of pasta and the packaging of the Products.

*Id.* ¶ 1.23.

Besides the injunctive relief, Barilla agrees not to oppose class counsel's application for an

award of up to $450,000 in costs and attorney's fees, *id.* ¶ 2.2, nor the four named Plaintiffs'

application for $1,500 incentive awards each, *id.* ¶ 7.3.

## DISCUSSION

### A. <u>Standard of Review of Proposed Class Action Settlements</u>

In the Second Circuit, "[t]here is a 'strong judicial policy in favor of settlements,

particularly in the class action context.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d

297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir.

2009)). "[C]lass action suits readily lend themselves to compromise because of the difficulties of

proof, the uncertainties of the outcome, and the typical length of the litigation." *Id.*

Nonetheless, before approving a class action settlement, the district court must conclude

that the proposed class meets the requirements for class certification set forth in Rule 23(a) and

the relevant subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d

Cir. 2012) [hereinafter *AIG*]. The court, "[c]onfronted with a request for settlement-only class

certification . . . need not inquire whether the case, if tried, would present intractable management

problems, for the proposal is that there be no trial." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "At the same time, however . . . 'other specifications of [Rule 23]— those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention.'" *Id.* (quoting *Amchem*, 521 U.S. at 620). "Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.'" *Id.* (quoting *Amchem,* 521 U.S. at 621).

In determining whether the class should be certified, the district court must determine that the terms of the proposed settlement are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). That determination rests in the discretion of the district court. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 273 (2d Cir. 2006). In exercising its discretion, the district court must engage in careful balancing but "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) [hereinafter *Grinnell*], *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Additionally, when considering the benefits achieved by a settlement, courts must keep in mind that "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As such, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [the Second Circuit] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Grinnell*, 495 F.2d at 456. "Defendants in class action suits are entitled to settle claims pending

against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)." *AIG*, 689 F.3d at 243–44; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) (en banc) ("[W]ere we to mandate that a class include only those alleging 'colorable' claims, we would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not. We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").

## B. **Mr. Schulman's Objection Is Overruled**

As noted, the sole objection to the proposed settlement was filed by Mr. Schulman of the Center for Class Action Fairness. This objection addressed several aspects of the proposed settlement and brought significant legal precedent to the Court's attention. *See Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) ("One good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement."). Nonetheless, for the reasons discussed below, the Court finds that the settlement agreement meets the requirements for final judicial approval in spite of Mr. Schulman's objection.

Standing to File Objection

Preliminarily, Plaintiffs argue that Mr. Schulman lacks standing to assert the objection. Pls.' Resp. to Obj. at 4. The Court disagrees.

Federal Rule of Civil Procedure 23(e)(5) provides that "[a]ny class member may object to the proposal if it requires court approval . . . ." Members of a class have Article III standing to object to a proposed settlement of that class's claims. *See Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) ("As a member of the [] class, petitioner has an interest in the settlement that creates a 'case

or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:22 (5th ed. 2018) ("Given that Rule 23 confers [] standing on class members, if the objector demonstrates her class membership, she has met the burden of proving her standing.").

Contrary to Plaintiffs' assertion otherwise, *see* Pls.' Resp. to Obj. at 2, the Court concludes that Mr. Schulman is a member of the class. In the preliminary settlement agreement approved by the Court, the class is defined as "All consumers in the United States and all U.S. territories . . . who purchased one or more of the Products from July 28, 2010 until" June 12, 2018. ECF No. 55-1 ("Prelim. Settlement Agreement") at 15-16. As an exhibit to his objection, Mr. Schulman submitted a declaration in which he averred that he purchased certain of the Products for personal, consumer use. ECF No. 62-1 ("Schulman Decl.") ¶ 4. Mr. Schulman also submitted a photograph of the boxes he purchased. *Id.* at 13. By way of this evidence, Mr. Schulman has established that he is a member of the class.

Because Mr. Schulman is a member of the class, he has standing to pursue his objection.[3] The Court will therefore proceed to address Mr. Schulman's two main arguments: (1) that the

---

[3] Plaintiffs argue that even if Mr. Schulman is a member of the class, he does not have standing to object because he claims that he was not personally misled or otherwise harmed by the empty space in the boxes of Barilla's specialty pasta and thus cannot demonstrate injury in fact. Pls.' Resp. to Obj. at 4. Plaintiffs have cited no authority for the proposition that a bona fide class member lacks standing under any circumstances. Even if they had, Plaintiffs misconstrue the injury in fact requirement by suggesting that Mr. Schulman's personal feelings about his pasta purchase are relevant. "Whether a plaintiff has suffered an injury in fact [does not turn] on the plaintiff's subjective experience of the harm she alleges . . . . In essence, the standing question is determined by 'whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975)).

changes to Barilla's packaging provided for under the settlement agreement are "worthless" relief that render representation of the class inadequate and the settlement itself unfair, and (2) that an injunctive-only settlement class should not be certified under Rule 23(b)(2).

      1.   <u>The Proposed Packaging Changes Provide a Sufficient Benefit in Light of the Strength of Plaintiffs' Claims and Are Not "Worthless"</u>

Mr. Schulman objects to the proposed settlement on the ground that the injunctive-only relief provided to Plaintiffs, namely the redesign of Barilla's specialty pasta boxes to include a fill line and disclaimer about the volume of the pasta contained in the boxes, is of no meaningful benefit to the class as a whole, whereas Plaintiffs' counsel and the named representatives unfairly receive monetary awards under the settlement. *See* ECF No. 62 ("Obj.") at 5-9.

The main case Mr. Schulman relies on is *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551 (7th Cir. 2017) [hereinafter *Subway*]. The plaintiffs in *Subway* claimed that they were misled by the restaurant's practice of marketing its sandwiches as "Footlongs" when the sandwiches in fact, at least sometimes, measured only 10 to 11 inches. *Id.* at 552-53. The district court had approved a settlement that provided fees for class counsel and the named plaintiffs, but only certain injunctive relief to the class as a whole. *Id.* at 554.

The Seventh Circuit reversed, vacating the district court's approval of the settlement and remanding. Notably, the panel began by explicitly finding that the plaintiffs' claims had no merit, suggesting that counsel for the class, "[i]n their haste to file suit, . . . neglected to consider whether the claims had any merit. They did not. Early discovery established that Subway's unbaked bread sticks are uniform, and the baked rolls rarely fall short of 12 inches." *Id.* at 553. That meant that, at the time the suit was filed, "each sandwich contained the same amount of bread even if an occasional loaf failed to bake to the full 12 inches in length." *Id.* at 556.

The problem with the settlement, in the Seventh Circuit's view, was that even with all of the stipulated injunctive relief in place, the actual amount of bread in Subway's Footlongs (as well as meat, cheese, and toppings) would remain the same as at the outset of the litigation. *Id.* at 554. The parties explicitly acknowledged in the settlement agreement that "'because of the inherent variability in food production and the bread baking process,' Subway could not guarantee that each sandwich roll will 'always be exactly 12 inches or greater in length after baking.'" *Id.* While the settlement agreement required Subway to prominently display a disclaimer stating that the bread in the Footlongs would not always bake to one foot in length, the Seventh Circuit concluded that it is "safe to assume that Subway customers know this as a matter of common sense," and, in any event, the disclaimer did nothing to change the amount of food in the sandwiches. *Id.* at 557.

 The Seventh Circuit therefore held that the disclaimer and the other injunctive relief provided by the settlement was "meaningless" and that, by negotiating only meaningless relief, the class representatives had failed to "fairly and adequately protect the interests of the class." *Id.* at 556 (quoting Fed. R. Civ. P. 23(a)(4)). It restated the rule of the Circuit that "[n]o class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *Id.* (quoting *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016) (Posner, J.)).

Mr. Schulman also discusses a recent decision from this District that cited *Subway*: *Guoliang Ma v. Harmless Harvest, Inc.*, No. 16-CV-7102 (JMA) (SIL), 2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) [hereinafter *Ma*]. *See* Obj. at 6-7. In *Ma*, the plaintiffs alleged that labels reading "raw" and "100% Organic" on the defendant's coconut water products were materially misleading. *Id.* at *1. But the defendant had already removed these labels more than a year prior to the filing of the litigation. *Id.* at *2. Just four days after the complaint was filed, the parties filed

a proposed settlement agreement. *Id*. The agreement provided for fees and awards to class counsel and the named plaintiffs, respectively, but to the class provided only an injunction requiring the defendant not to put back on the labels it had already removed. *Id*. The court found this injunctive-only relief "worthless." *Id*. at *7. Unlike *Subway*, however, which overturned the settlement on the basis that the class received inadequate representation, the court in *Ma* found that the worthless nature of the relief rendered the settlement unfair under Rule 23(e). *Id*.

*Analysis*[4]

The Court declines to follow the reasoning in *Subway*. In assessing the sufficiency of the relief afforded to the class under a settlement agreement, the Court considers the value of the relief *in light of the nature and the strength of Plaintiffs' claims*, rather than whether the relief is "worthless" or "meaningless" in the abstract.

*Grinnell*, the Second Circuit's seminal case for assessing the fairness of class action settlements, instructs the Court to consider "the range of reasonableness of the settlement fund *in light of the best possibly recovery* [and] *in light of all the attendant risks of litigation*." 495 F.2d at 463 (emphasis added); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("The [court's] primary concern is with the substantive terms of the settlement: 'Basic to this . . . is the

---

[4] On December 1, 2018, after the proposed settlement agreement and Mr. Schulman's objection were filed with the Court, a revised version of Federal Rule of Civil Procedure 23(e)(2) became effective for any federal district court weighing approval of a class action settlement. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D). The new version of the rule explicitly requires the Court to consider whether "the relief provided for the class is adequate," *id*. 23(e)(2)(C), when assessing whether the settlement itself is fair, reasonable, and adequate. In determining whether the relief is adequate, the Court must in turn consider a number of subfactors. *Id*. 23(e)(2)(C)(i)-(iv).

The Court considers the settlement agreement in light of the newly applicable criteria in detail later in this opinion. *See* Section E(C), *infra*. These criteria overlap almost entirely with existing Second Circuit precedent and do not alter the Court's analysis of Mr. Schulman's objection. As stated in Section E, the Court finds that consideration of these criteria further support approval of the settlement agreement under Rule 23(e)(2), including finding that "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C).

need to compare the terms of the compromise with the likely rewards of litigation.'") (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968) (alterations in original)). Some authorities have, taking this principle to the extreme, suggested that if a class's claims are truly meritless, it may be permissible to release these claims through a settlement agreement in exchange for no benefit at all. *See Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318, 339 (E.D.N.Y. 2007) ("A claim which cannot be proven is worth essentially nothing. Consideration of nothing for releasing a worthless claim is therefore fair, reasonable, and adequate." (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005))); 4 William B. Rubenstein, Newberg on Class Actions § 13:60 (5th ed. 2018) ("It is fine to release a claim without compensation if the value of the claim is zero.").

The Court need not reach such a conclusion, because the injunctive relief here is not in fact "worthless" *as compensation for Plaintiffs' claims*. Plaintiffs allege that the empty space in Barilla's specialty pasta boxes misleads consumers into believing the boxes contain more pasta than they actually do. *See* Am. Compl. ¶¶ 27, 30, 32, 34. The injunctive relief provided by the settlement agreement requires Barilla to add a fill line to these boxes, clearly illustrating the portion of the box that contains pasta. Settlement Agreement ¶ 2.1.1; Proposed New Packaging. It also requires Barilla to add a label advising that the contents of the box may shift and settle. *Id*. To the extent that Barilla's specialty pasta boxes actually deceived consumers into believing that they contained more pasta than they did, the addition of a fill line and disclaimer tends to mitigate that deception. Thus, these packaging changes directly remedy Plaintiffs' complained-of wrong. This relief is sufficient.

The fact that the settlement does not provide damages to the class does not render the injunctive relief insufficient, because Plaintiffs would be unlikely to receive damages if the case

proceeded on the merits. Several recent decisions in our Circuit have dismissed or denied slack fill claims similar to those brought by Plaintiffs. *See Miao Xin Hu v. Iovate Health Scis. U.S.A. Inc.*, No. 17-CV-9427 (ER), 2018 WL 4954105, at *2 (S.D.N.Y. Oct. 12, 2018) (noting that "[g]enerally, courts within this District have found that labels on packages that clearly indicate the product's weight prevent plaintiffs from succeeding on nonfunctional slack fill claims," and collecting cases); *see also Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) ("Several courts, including a district court within the Second Circuit, have held that reasonable consumers would not be misled by non-functional slack fill as a matter of law where the products clearly disclosed accurate net weight and/or the total product count.") (citing *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016)).

In the Court's view, the weakness of Plaintiffs' claims—the unlikelihood that the class would be able to establish a right to damages—reinforces rather than dilutes the adequacy of the injunctive-only relief provided for in the settlement. This stands in contrast to *Subway*, wherein the Seventh Circuit's determination that the plaintiffs' claims had no merit whatsoever, 869 F.3d at 553, did not seem to affect its assessment of whether the relief provided to class was sufficient as consideration for those claims. In this Court's view, if the class has only very weak potential for recovery of damages, injunctive-only relief is a fair and reasonable award. *Weinberger*, 698 F.2d at 73.

This is not to say that relief provided to the class under a settlement agreement could never be so illusory or irrelevant to the plaintiffs' claims that the agreement itself is unreasonable. *Ma* presents a compelling argument for rejecting a proposed settlement on that basis. That case, however, is factually distinguishable. The settlement agreement in *Ma* only required the defendant not to place allegedly misleading labels on its products that it *had already removed* well prior to

the initiation of the litigation. *Ma*, 2018 WL 1702740 at *7. The "injunction" issued under the terms of the settlement literally did not require the defendant to alter its conduct whatsoever. The court was thus not required to base its conclusion that the relief was "worthless" on an assessment of whether it could have potentially been deceptive to a consumer, which is the kind of fact-intensive merits question that the court is neither required nor permitted to ultimately asses in the context of settlement, *Grinnell*, 495 F.2d at 456. Rather, the *Ma* court could easily find that the injunction was worthless because it would bring about no actual change.[5] 2018 WL 1702740 at *7. In the instant case, although the Court has its doubts about whether the injunctive relief is necessary to accurately advertise the pasta, the injunction actually requires Barilla to add labels to its packaging that tend to make clearer how much pasta is in the boxes.

Thus, the Court finds that the injunctive relief provided under the settlement agreement is not "worthless" and is sufficient consideration for the class in light of the nature and strength of the plaintiffs' claims.

### 2. The Class Meets the Requirements of Rule 23(b)(2)

Mr. Schulman next argues that, for various reasons, the settlement class does not meet the requirements for certification under Rule 23(b)(2). *See* Obj. at 9-15.

A class may be certified under Rule 23(b)(2) if and only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As such, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification

---

[5] It could also likely have refused to certify the settlement class on standing grounds.

when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360 (emphasis in original).

<u>Past Purchasers Can Obtain Injunctive Relief</u>

Mr. Schulman first argues that an injunction requiring changes to the labeling on packages of Barilla's specialty pastas in the future is not appropriate to the class as a whole because the class is defined as past purchasers of these products, and "[i]t is not logically possible to suggest that all class members will again purchase Barilla products in the future." Obj. at 11-12.

Similar arguments have been lodged against the certification of Rule 23(b)(2) classes in false advertising cases on many occasions, with varying results. Several courts in this Circuit have found that past purchasers of a product may obtain an injunction requiring a labeling change through Rule 23(b)(2) even if there is no clear evidence that they will purchase the product again. *See In re Amla Litigation*, 282 F. Supp. 3d 751, 769 (S.D.N.Y. 2017); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 543 (E.D.N.Y. 2017); *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 (JS) (AKT), 2017 WL 9480894, at *12-13 (E.D.N.Y. Mar. 9, 2017), *adopted by* 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 67 (E.D.N.Y. 2015); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395 (DLI) (RML), 2013 WL 7044866, *17 (E.D.N.Y. July 18, 2013); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 434 (S.D.N.Y. 2009). These courts argue that to bar those plaintiffs from pursuing injunctive relief would prevent any plaintiffs from ever enjoining companies to discontinue the use of misleading advertisements or labels. As the Honorable Jack B. Weinstein explained in *Belfiore*, "[t]he only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury. But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction." *Belfiore*, 311 F.R.D. at 67. Several other courts have

recognized this Catch-22, but have nonetheless denied injunctive relief in false advertising cases because the plaintiffs, who by definition already know of the deception, cannot prove a threat of future injury. *See Tomassini v. FCA US LLC*, 326 F.R.D. 375, 390 (N.D.N.Y. 2018) (claiming that "the majority of district courts in this circuit have found that consumers in Plaintiff's situation do not have Article III standing" and collecting cases).

The Court agrees with the reasoning in the former set of cases and finds that the consumers here can obtain injunctive relief. Although the class is technically defined by the past rather than the future activity of its members, it is not feasible to define a class based on consumers' prospective future purchases. *See* 1 McLaughlin on Class Actions § 5:15 (15th ed. 2018) ("[T]he requisite imminent threat of future injury [is not] present based on a representation by plaintiff of intent to purchase another item of the product in the coming months."). Of the classes of people who are actually ascertainable, those who have purchased these pastas in the past would seem to be more likely to purchase them in the future than any other. *See Lilly v. Jamba Juice Co.*, No. 13-CV-2998 (JST), 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[B]ecause this consumer has already voted with her wallet, we know that she is the *most* likely to be injured in the absence of an injunction, not the least.") (emphasis in original). And future purchasers would still be buying an allegedly deceptive product, even if they know of the manner in which it is deceptive. As Judge Weinstein succinctly put it, "Consumers are still at risk of purchasing a mislabeled product. Injunctive relief is appropriate." *Kurtz*, 321 F.R.D. 482 at 543.

### *Monetary Relief Is Not Adequate*

Mr. Schulman next argues that injunctive relief is inappropriate for the class because monetary damages are an adequate remedy at law for the plaintiff-consumers. When monetary

relief at law is "adequate" to compensate a party, the court cannot issue an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

It is at least theoretically true that the class members' alleged pasta shortfall could be remedied by awarding money damages. The "adequacy" of monetary damages under this longstanding rule, however, is not just a theoretical inquiry, but a practical one. As one commentator has described:

> A legal remedy is adequate only if it is as complete, practical, and efficient as the equitable remedy. [Monetary damages may be inadequate] when, for example, damages are difficult to prove; specific property is the subject of the dispute and a substitute is not readily available; the plaintiff may have trouble collecting damages; or the dispute may result in a multiplicity of suits.

Eric J. Konopka, *Hey, That's Cheating! The Misuse of the Irreparable Injury Rule as a Shortcut to Preclude Unjust-Enrichment Claims*, 114 Colum. L. Rev. 2045, 2061-62 (2014) (internal quotation marks and citation omitted). The Second Circuit has held on multiple occasions that injunctive relief is appropriate where damages are not adequately ascertainable. *See, e.g.*, *Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 415 (2d Cir. 1982). ("Since Arrow's damages will not adequately be ascertainable, the district court did not err in determining that the likely harm to Arrow is sufficiently irreparable to justify a preliminary injunction.") (citing *Ives Laboratories, Inc. v. Darby Drug Co.*, 601 F.2d 631, 644 (2d Cir. 1979) and *Interphoto Corp. v. Minolta Corp.*, 417 F.2d 621, 622 (2d Cir. 1969)); *see also Foundry Servs., Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1953) (noting that issuance of an injunction is permissible when the plaintiff's injuries cannot be "adequately redressed by money damages *ascertainable upon proof*") (emphasis added).

At the Fairness Conference, the parties represented to the Court that damages in this case would be almost impossible to ascertain and would likely be in an amount so small that

apportioning them would result in nominal payouts to class members. Given the omnipresence of Barilla's products and the limited monetary value of the amounts of pasta the class members allegedly lost out on, the Court accepts these representations as accurate. Thus, the Court finds that monetary damages would not be an adequate remedy at law.

In contrast to the practical impediments to awarding damages, the changes to Barilla's packaging constitute an ascertainable and indivisible form of relief that provides benefit to the class members all at once. *See Elkind*, 2017 WL 9480894 at *13. The Court therefore finds that monetary damages would not be an adequate remedy at law, and the issuance of injunctive relief to the class is appropriate.

### *The Release of the Class Members' Damages Claims Is Appropriate*

Finally, Mr. Schulman argues that the fact that the settlement class is certified under Rule 23(b)(2) makes the settlement agreement's release of damages claims impermissible.

The Court disagrees. As the Second Circuit has held,

> Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief. Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle.

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247–48 (2d Cir. 2011) (internal quotation marks and citations omitted).[6] "This rule of law serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 272 (E.D.N.Y. 2017), *as revised* (June 16, 2017) (citing *In*

---

[6] In this case, both Plaintiffs' complaint and amended complaint in fact requested an injunction requiring Barilla to modify its packaging, in addition to damages. ECF No. 1 at 15; ECF No. 26 at 18.

*re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010)). However, any claims released by operation of a settlement agreement must be "based on the identical factual predicate as that underlying the claims in the settled class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982).

The settlement agreement here provides for the release of the class members' damages claims. Settlement Agreement ¶ 1.23. However, that release is limited in factual scope to claims "relating to the amount of pasta contained in a package of pasta and the packaging of the Products." *Id*. The Court construes the phrase "the amount of pasta contained in a package of pasta" to reference only claims regarding those varieties of pasta contained within the definition of "Products," *id.* ¶ 1.21, not any other varieties of Barilla pasta, which were never at issue in this action. With this clarification, the release is properly confined to the factual predicate on which this action is based.[7]

The release of the class members' damages claims also implicates the due process rights of the absent class members. Normally, a class certified under Rule 23(b)(2) need not be provided an opportunity to opt out of the settlement. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009). However:

> In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court reasoned that a claim for money damages—a "chose in

---

[7] Mr. Schulman suggests that identical factual predicate is not enough to justify release of these claims, arguing that "[i]n a (b)(2) class settlement, the release should confine itself to future claims for injunctive relief." Obj. at 14. In support of this proposition, he quotes the Supreme Court's statement in *Dukes* that "individualized monetary damages claims belong in Rule 23(b)(3)." *Id.* (quoting *Dukes*, 564 U.S. at 362).

This citation is inapplicable. *Dukes* did not restrict the release of class members' rights to seek damages through a Rule 23(b)(2) settlement class. Rather, it restricted the *award* of non-incidental damages through a (b)(2) class. Mr. Schulman has cited no case for the specific proposition that damages claims of a (b)(2) settlement class cannot be released. Such a proposition would be inconsistent with the broad authority given to parties settling class actions to release claims based on legal theories other than those in the complaint.

action"—is "a constitutionally recognized property interest possessed by each of the plaintiffs" whose claims are represented in a class action. *Id.* at 807, 105 S.Ct. 2965. In order for a court "to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection.... [D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class...." *Id.* at 811–12, 105 S.Ct. 2965.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 241 (2d Cir. 2016). As noted, the settlement agreement here provides for the release of the class members' claims for damages. Settlement Agreement ¶ 1.23. It also duly provides the "minimal procedural due process protection" announced in *Shutts*, namely notice to the class members and the opportunity to opt out of the class. *See* Settlement Agreement ¶¶ 4.1-4.5.4; ECF No. 60-2 (Notice); ECF No. 60-3 (Notice Plan).

Because the released damages claims are based on the identical factual predicate as the claims in this case and the class members have the opportunity to opt out of the settlement, the Court finds that the scope of the release is appropriate.

As such, the settlement class satisfies the requirements of Rule 23(b)(2).

### C. **The Class is Certified**

Rule 23(a) imposes four threshold requirements for certification of a class action: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

_Numerosity_

"[N]umerosity is presumed at a level of 40 members." _Consol. Rail Corp. v. Town of Hyde Park_, 47 F.3d 473, 483 (2d Cir. 1995). "The movant need not provide a precise quantification of their class, since a court may make common sense assumptions to support a finding of numerosity. Nevertheless, the Plaintiff must show some evidence of or reasonably estimate the number of class members." _Kalkstein v. Collecto, Inc._, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). Plaintiffs have not provided an exact figure or an estimate of the number of purchasers of Barilla's specialty pastas, but they note that the "Products are ubiquitous, heavily-marketed, and available nationwide." ECF No. 61 at 14. Although these border on "bare allegations," _Flores v. Anjost Corp._, 284 F.R.D. 112, 123 (S.D.N.Y. 2012), the Court finds impossible, as a matter of common sense, that fewer than forty people purchased these Barilla products during the relevant period. Thus, numerosity is satisfied.

_Commonality and Typicality_

The commonality and typicality requirements are also met. A class may only be certified if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims m one stroke." _Dukes,_ 564 U.S. at 350. What matters is "'the capacity of a classwide proceeding to generate common _answers_ apt to drive the resolution of the litigation.'" _Id._ (emphasis in original) (quoting Richard A. Nagareda, _Class Certification in the Age of Aggregate Proof,_ 84 N.Y.U. L. Rev. 97, 132 (2009)). "'[F]actual differences in the claims of the class do not preclude a finding of commonality.'" _Newman v. RCN Telecom Servs., Inc.,_ 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (quoting 5 _Moore's Federal Practice_ § 23.23). Commonality may

be found were the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)

The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites. *Dukes,* 564 U.S. at 350 n.5; *Marisol A.,* 126 F.3d at 376. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of [those] of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.,* 126 F.3d at 376. "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the common question of law and fact in this case is whether Defendants' packaging of the Products would be misleading to a reasonable consumer. That is sufficient to satisfy commonality. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409-10 (S.D.N.Y. 2015).

In addition, the named Plaintiffs' claims are typical of the class. They bought Barilla's allegedly misleading pasta boxes. *See* Joint Declaration, ECF No. 60 ¶ 58. So did the class members. Settlement Agreement ¶ 1.23. This is sufficient to satisfy Rule 23(a)(3). *See Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014).

<u>*Adequacy of Representation*</u>

In order to show adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and, (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378 (internal quotation marks omitted). To satisfy the first prong, courts in this Circuit have required that plaintiffs show that "no fundamental conflicts exist"

between the class's representatives and its members. *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (citing *In re Literary Works*, 654 F.3d at 249).

The Court has already concluded that the relief provided by the settlement does not negate the adequacy of the representation provided by class counsel and the lead Plaintiffs. *See* Section B(1), *supra*. The Court finds no other indication that there is a conflict between class counsel or the lead Plaintiffs and the class in any other respect, or that counsel's representation has been deficient. The Court therefore concludes that Rule 23(a)(4) is satisfied.

*Requirements of 23(b)(2)*

The Court has determined that the class meets the requirements of Rule 23(b)(2). *See* Section B.2, *supra*.

As such, the Court certifies the settlement class.

**D. The Notice Provisions of the Settlement Are Appropriate**

The Court previously reviewed and approved the notice plan set forth by the parties in preliminarily approving the settlement agreement. Order Preliminarily Approving Settlement, ECF No. 57 at 4-9.

Notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950). The district court is given broad discretion as to method and manner of notice, so long it is consistent with the standards of reasonableness imposed by the due process clause. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (the district court "has virtually complete discretion as to the manner of giving notice to class members."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e)

requirements." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

Plaintiffs contracted with Kurtzman Carson Consultants LLC ("KCC") to develop and implement the notice plan in this case. *See* ECF No. 60-1 at 55. KCC purchased approximately 14,925,000 internet impressions to be distributed over the Google Display Network, Facebook, and Pinterest. *Id*. KCC also maintained an informational website (www.barillaclassaction.com) and a toll-free telephone helpline. *Id.* The notice plan commenced shortly after the settlement was preliminarily approved in June 2018, meaning class members were given several months—until the November 19, 2018 objection deadline—to object to the settlement or opt out of the class. Joint Decl. ¶ 67. This provided sufficient time to object to or opt out of the settlement. The notice provided class members with relevant details about the action and the settlement. ECF No. 55-3. The notice plainly indicated the time and place of the hearing to consider approval of the settlement and the method for objecting to or opting out of the settlement. *Id.* at 8-9. The notice also detailed the provisions for payment of attorney's fees and expenses and case contribution awards to the class representatives, and provided contact information for class counsel. *Id.* at 9. Although class members did not individually receive notice of the action, individualized notice is generally not required for classes certified under Rule 23(b)(2). *See* 3 William B. Rubenstein, Newberg on Class Actions §§ 8:4, 8:15. The Court finds that the targeted web-based advertisements described in the Notice Plan provided sufficient notice of the action to absent class members.

### E.  The Proposed Settlement is Fair, Reasonable, and Adequate

A district court's approval of a settlement is contingent on its finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether a proposed settlement agreement meets this standard, district courts in the Second Circuit have traditionally been guided by the factors set forth in *City of Detroit v.*

*Grinnell Corporation,* 495 F.2d 448 (2d Cir. 1974). However, on December 1, 2018, after the parties filed the proposed settlement, Federal Rule of Civil Procedure 23 was revised to include specific criteria that inform whether the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D). It is unclear whether these criteria replace or merely supplement the *Grinnell* factors. Accordingly, the Court will discuss both the *Grinnell* factors and the Rule 23(e) criteria in turn. After considering both, the Court finds that the settlement is fair, reasonable, and adequate.

### *Grinnell Factors*

The nine *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). "All nine factors need not be satisfied; rather, a court should look at the totality of these factors in light of the particular circumstances." *In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761 (CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (internal quotation marks and citation omitted).

### 1. The complexity, expense and likely duration of the litigation

The complexity, expense, and likely duration of the litigation favor the proposed settlement. This case involves the claims of a large number of consumers and purchases. Joint Decl. ¶ 49. Plaintiffs would have to establish the effect of the alleged slack fill in more than a dozen separate products. *Id*. Throughout the time period which Plaintiffs challenge Defendant's labeling practices, the packaging of the Products has varied, and each of these various packages

may present separate issues. *Id*. Some of the products have been sold in multiple sizes. *Id*. Moreover, the legal question at issue is whether a reasonable consumer would be materially misled by the slack fill in the packaging of the Products. These fact-intensive standards would likely require significant discovery, including expert witness practice, to resolve fully.

### 2. The reaction of the class to the settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Visa U.S.A.*, 396 F.3d at 118.

Here, notice of the proposed settlement was advertised nationally through roughly 15,000,000 targeted online advertisements. Only one objection to the settlement was lodged, albeit a substantive one. Considering the likely size of the proposed class, the receipt of only one objection to the settlement indicates a favorable reaction to the settlement.

### 3. The stage of the proceedings and the amount of discovery completed

While the parties need not have engaged in extensive discovery, *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982), a sufficient factual investigation must have been conducted to afford the Court the opportunity to "'intelligently make . . . an appraisal' of the Settlement," *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer,* 668 F.2d 654). In addition, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (alterations in original) (quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

The parties have not engaged in formal discovery. Nevertheless, Plaintiffs retained an expert witness and received sales information from Barilla about its specialty pasta products. Joint Decl. ¶¶ 20, 24. The parties attended three settlement conferences before the Court, as well as the

Fairness Conference. ECF Nos. 40-42, 68. The parties displayed a meaningful understanding of the facts underlying the litigation at these conferences.

Moreover, the parties took clearly adversarial positions in the litigation prior to settlement. At the time the parties entered into settlement, Defendant's motion to dismiss, ECF No. 33, remained pending with the Court. The settlement conferences before the Court also reflected that the parties reached the settlement only after staking genuinely adversarial positions. This factor favors approval of the settlement.

### 4. The risks of establishing liability

In considering this factor, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Plaintiffs would face substantial risks in establishing liability. They would have to establish an exception to the significant adverse decisions regarding the general validity of slack fill claims in our Circuit. This factor favors approval of the settlement.

### 5. The risks of establishing damages

Plaintiffs would also face major risks in establishing damages. Determining the number of purchasers of the Products to a reasonable degree of certainty would be exceedingly difficult considering the vast scope of Defendant's sales. Determining the value of each allegedly deceptive sale of the Products, not to mention the value of Plaintiffs' claims in the aggregate, would also be subject to significant contention. This factor favors approval of the settlement.

### 6. The risks of maintaining the class action through trial

Defendant would likely oppose certification of a litigation class and may have meaningful

arguments for this opposition. This factor favors approval of the settlement.

### 7. The ability of the defendant to withstand a greater judgment

This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate. *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom.*, *In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). However, it does not follow that a defendant's ability to withstand a greater judgment militates against approval of the settlement. *Id.*

Here, Defendant could withstand a greater judgment, but this does not detract from the fairness of the settlement.

### 8-9. The range of reasonableness of the settlement fund in light of the best possible recovery and in light of all of the attendant risks of litigation

The Court has addressed these factors in its discussion of Mr. Schulman's Objection. The limited potential recovery under Plaintiffs' claims and the value of the injunctive relief provided by the settlement as a remedy for their complained-of wrong favor approval of the settlement.

As such, the Court's consideration of the *Grinnell* factors supports a finding that the settlement is fair, reasonable, and adequate.

### Rule 23(e)(2) Criteria

Under the December 1, 2018 revisions to Rule 23(e)(2), the Court may approve a proposed settlement that would bind class members only if it finds that the settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). The Court will discuss these criteria in turn.

## A. Adequate Representation

The Court has previously discussed the adequacy of representation by class counsel and by the named representatives in connection with Mr. Schulman's Objection. *See* Section B(1), *supra*. The Court has also discussed the adequacy of class counsel's representation in holding that the settlement class may be certified pursuant to Rule 23(a)(4). *See* Section C, *supra*.

The Court additionally finds that representation by class counsel and the named representatives supports a finding that the settlement is fair, reasonable, and adequate. No direct conflicts exist between these representatives and the absent class members. While class counsel and the named plaintiffs receive attorney's fees and incentive awards, respectively, the Court has thoroughly reviewed the bases for these awards and is satisfied that they are fair and reasonable in light of the work performed and the relief obtained by the representatives. *See* Section F, *infra*.

## B. Arm's Length Negotiation

Under Second Circuit precedent, a proposed settlement is presumed to be fair, reasonable, and adequate if it is the result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds*, 588 F.3d at 803 (internal quotation marks and citation omitted). Under the revised Rule 23(e)(2) criteria, whether the settlement agreement "was negotiated at arm's length" is a factor for the Court's consideration. Fed. R. Civ. P. 23(e)(2)(B).

Whether giving rise to a presumption of fairness or serving as one consideration in a multifactor test, the proposed settlement here was negotiated at arm's length by experienced and capable counsel, who engaged in several settlement discussions, including conferences before the Court, over the course of several months. See Joint Decl. ¶¶ 21-29, 42-44. This supports the conclusion that the settlement is fair, reasonable, and adequate.

## C. Adequacy of Relief Provided to the Class

The Court has discussed the adequacy of the relief provided to the class under the settlement agreement at some length, *see* Sections B(1), E(8)-(9), *supra*, and need not reproduce its reasons for finding that the packaging changes constitute adequate relief. Rule 23(e)(2)(C), however, requires the Court to consider specifically formulated subfactors that vary, albeit minimally, from the *Grinnell* factors and other considerations the Court has previously discussed. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). The Court discusses each of these subfactors below.

### *i. Costs, risks, and delay of trial and appeal*

The avoidance of the substantial costs, risks, and delay that would occur if this litigation were to proceed to trial and/or result in an appeal militate in favor of finding the proposed settlement fair, reasonable, and adequate. *See* Section E(1), (4-6), *supra*.

### *ii. Effectiveness of distribution of relief*

The injunction provided for in the settlement will result in changes to the packaging of Barilla's specialty pastas nationwide. It will thus provide uniform relief to all consumers of these pastas in the class. This constitutes effective distribution.

*iii. Terms of award of attorney's fees, including timing of payment*

The Court discusses the proposed award of attorney's fees under the traditional *Goldberger* factors. *See* Section F, *infra*. For the reasons set forth therein, the Court concludes that the amount of fees provided for in the settlement agreement are fair and reasonable.

Rule 23(e)(2)(C)(iii) also requires the Court to consider the timing of the payment of attorney's fees. The timing of the payment of fees would appear to be less relevant, however, where, as here, the fees are being borne entirely by the defendant. *See* Settlement Agreement ¶ 7.1. The proposed settlement agreement provides that Barilla will pay Plaintiffs' attorney's fees within 20 calendar days of the entry of final judgment. *Id.* ¶ 7.2. The Court finds this length of time fair and reasonable.

*iv. Any agreement required to be identified under Rule 23(e)(3)*

Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal" of settlement. Generally, this provision has been read to reference the settlement agreement itself, including attorney's fees awarded pursuant to the settlement. 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018). The Court has considered the proposed settlement and finds that its terms provide adequate relief to the class.

**D. Equitable Treatment of Class Members Relative to Each Other**

Finally, under the agreement, the class members are treated equitably relative to each other. Barilla's packaging changes will be uniformly applied nationwide. All purchasers of the affected products will benefit from the packaging changes.

Therefore, in light of both the *Grinnell* factors and the criteria set forth in Rule 23(e)(2), the Court finds that the proposed settlement is fair, reasonable, and adequate.

**F. <u>The Award of Fees and Costs Set Forth in the Settlement Agreement Is Reasonable</u>**

Pursuant to the Settlement Agreement, Defendant has agreed not to contest Plaintiffs' application for an award of up to $450,000, which includes both attorney's fees and costs. Settlement Agreement ¶ 2.2. Class counsel aver that they did not discuss fees and expenses until after the parties agreed to the substantive terms of the settlement. Joint Decl. ¶ 29. The parties also aver that the figure of $450,000 was agreed to only "after extensive negotiation." Settlement Agreement ¶ 7.1.

The Court has reviewed the documents submitted by class counsel in support of their request for attorney's fees and costs, including contemporaneous attorney billing records and receipts/invoices for the claimed costs. For the reasons discussed below, the Court finds that an award of $450,000, inclusive of fees and costs, is reasonable.

*Standards*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . . ." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Given that the settlement establishes no common fund, the Court will utilize the lodestar method.

Using the lodestar method, the Court calculates a "'presumptively reasonable fee' [that] is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). The reasonable hourly rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." *Arbor Hill*, 522 F.3d at 190 (alteration in

original). "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006) (citation omitted), *aff'd*, 531 F.3d 127 (2d Cir. 2008). Once the Court has calculated a lodestar, it "may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Goldberger*, 209 F.3d at 47. Even when relying on the lodestar method in a class action settlement, the Court is "guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Id.* at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

### Class Counsel's Lodestar

The Plaintiffs' attorneys and paralegals assert that they have spent a total of approximately 990 hours in the investigation, prosecution, and settlement of this action. Joint Decl. ¶ 70. Plaintiffs' counsel identified and investigated potential claims, drafted and filed the initial and amended complaints, consulted with an expert, submitted an opposition to Barilla's motion to dismiss, communicated extensively with Barilla at settlement conferences, mediation, and elsewhere to reach a settlement of this matter, drafted the Settlement Agreement and related documents, and worked with a claims administrator to implement the settlement. *Id*. The Court finds that the attorneys' and paralegals' billing records reflect that these hours were reasonably incurred.

On the other hand, class counsel's asserted hourly rates—which range from $700 to $850 for partners, $750 for a senior associate, and $275 for paralegals—are unreasonable. They are significantly above the rates normally approved in this district. *See Ferrara v. CMR Contracting LLC,* 848 F.Supp.2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants."); *accord Kindle v. Dejana*, 308 F. Supp. 3d 698, 704 (E.D.N.Y. 2018). Even assuming some inflation in these rates, counsel's asserted lodestar of more than $670,000, Joint Decl. ¶ 70, is not supported by any special factors that might merit such an upward deviation.

As noted, however, the settlement agreement does not provide for an award of class counsel's asserted lodestar. Instead, it provides that Barilla will not contest an award of attorney's fees and costs which total $450,000. Settlement Agreement ¶ 7.1. Given Plaintiffs' request for costs in the amount of $34,223.13, Joint Decl. ¶ 70, this puts the uncontested award of attorney's fees at $415,776.87. This figure can be reached by valuing class counsel's time near the upper limit of the normal ranges in our District for each of category of practitioner. The Court finds that this amount constitutes a reasonable lodestar.

### *The Goldberger Factors*

The Court finds that, on the whole, an analysis of the *Goldberger* factors in this case supports the uncontested $415,776.87 attorneys' fee award, although it does not support a multiplier of that award.

### 1. The time and labor expended by class counsel

The time and labor expended by class counsel is reasonable considering that this case settled after Defendant filed a motion to dismiss and after the parties engaged in substantial settlement negotiations. The claimed time is supported by class counsel's billing records. This factor favors the award of class counsel's lodestar amount.

### 2. The magnitude and complexities of the litigation

Courts have recognized that consumer class action lawsuits, like this one, are complex, expensive, and lengthy. *See*, *e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). While this particular consumer class action may not present uniquely complex questions, it nonetheless, as the Court has discussed, would require intensive factual investigation to resolve the claims. This factor favors the award of class counsel's lodestar amount.

### 3. The risk of the litigation

"The risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *MetLife*, 689 F. Supp. 2d at 361; *see also Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost factor' to be considered in determining whether to award an enhancement.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)). The Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent fee basis. *See Grinnell*, 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *MetLife*, 689 F. Supp. 2d at 361 (internal quotation marks and citation omitted). The attorneys for the class undertook this litigation on a contingent basis and have

received no payment for their work during the roughly three years that the case has remained pending, which counsels in favor of the proposed fee.

The difficulties class counsel would have had in establishing the class's claims to relief, which the Court has discussed throughout this opinion, also present serious risks in the absence of settlement. Defendant has already filed a motion to dismiss which presents significant defenses to Plaintiffs' claims. The same goes for certification of the class on a contested motion, and for management of the class, which would consist of consumers nationwide whose identities would likely prove extremely difficult to ascertain. *See In re AOL Time Warner ERISA Litig.*, No. 02-CV-8853 (SWK), 2006 WL 2789862, at *8 (S.D.N.Y. Sept. 27, 2006) ("[E]ven the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). Even if this case were to overcome all of these potential obstacles and proceed to a jury trial, obtaining a meaningful recovery would be far from a sure thing for Plaintiffs. *See Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) ("Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony.") (citation omitted). As such, this factor weighs in favor of awarding the uncontested amount of fees in the settlement.

### 4. The quality of representation

As the Court previously stated, class counsel in this case is experienced and adequate. *See* Order Preliminarily Approving Settlement, ECF No. 57 ¶ 8. The Court has taken into account the quality of class counsel's representation in determining that the uncontested amount of fees in the settlement constitutes a reasonable lodestar for class counsel. This factor favors awarding the uncontested amount of fees in the settlement.

### 5. The requested fee in relation to the settlement

It is difficult to place a dollar value on injunctive relief like the labeling changes Barilla has agreed to make pursuant to the settlement. It is nonetheless well established that non-monetary benefits may be considered in the Court's analysis under this prong of *Goldberger*. *See Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015) (including the "substantial" non-monetary benefits in the valuation of the relief provided by the settlement); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 388 (S.D.N.Y. 2005) (considering the value of injunctive relief obtained in determining the appropriate fee, while noting that "[t]he value of the Structural Changes is more difficult to quantify"), *aff'd sub nom.*, *McCoy v. United Parcel Serv.*, 222 F. App'x 87 (2d Cir. 2007).

The inherent difficulty in monetary valuation of the injunctive relief can be largely avoided, here, however, because the fee award contemplated under the settlement only represents class counsel's lodestar, rather than a multiplier of it. Where the settlement relief is injunctive-only, the award of class counsel's lodestar as attorney's fees appears reasonable. This factor thus favors approval of the uncontested amount of fees in the settlement.

### 6. Public policy considerations

"Public policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214 (CM), 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012). The very small claims of the members of the class, when taken separately, would not justify the expense of litigation. Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis. *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009).

Although slack fill claims have been called into serious doubt by courts within this Circuit, the public policy considerations favoring the award of attorney's fees to class action counsel still militate in favor of awarding class counsel reasonable attorney's fees.

Because all of the *Goldberger* factors support the award of $415,776.87 in attorney's fees provided for in the parties' settlement, the Court grants class counsel attorney's fees in this amount. Class counsel are to allocate these fees among themselves fairly.

*Costs*

The remainder of the $450,000 provided for in the Settlement Agreement consists of costs to be award to Plaintiffs' counsel. This amounts to a request for $34,223.13 in costs by Plaintiffs. *See* Joint Decl. ¶ 70.

"Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 (VM), 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)).

As directed by the Court, ECF No. 69, Plaintiffs' counsel have submitted documentary evidence supporting their request for an award of costs. The Court finds that Plaintiffs' request for costs is substantiated and awards costs in the amount of $34,223.13.

*Incentive Awards*

Plaintiffs also request incentive awards of $1,500 for each of the named Plaintiffs in this action. Such awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks and citation

omitted); *see also Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.").

The named Plaintiffs have submitted declarations detailing their efforts in this action. ECF Nos. 60-5–60-8. While they do not appear to have been exposed to any particular risk in undertaking this litigation, they have taken extra efforts to prosecute the action as detailed in their declarations. The incentive awards requested by Plaintiff are modest relative to others awarded in our Circuit. *See Kindle*, 308 F. Supp. 3d at 718 (E.D.N.Y. 2018) (awarding named plaintiff $10,000 and collecting cases granting incentive awards in this amount). The Court approves the requested incentive awards as fair and reasonable.

## CONCLUSION

For the reasons set forth herein, the Court certifies the proposed settlement class and finds the terms of the Settlement Agreement to be fair, reasonable, and adequate. Accordingly, the Motion for Final Approval of the Settlement is GRANTED. Class counsel is awarded attorney's fees and costs in the total amount of $450,000, to be paid by Defendant and apportioned fairly among class counsel. The named Plaintiffs are each awarded $1,500 as incentive awards to be paid by Defendant.

This case is dismissed with prejudice and closed.

**SO ORDERED.**

_____/s/_____
The Hon. Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
      June 3, 2019